1  Rosemary M. Rivas (#209147)
   **FINKELSTEIN THOMPSON LLP**
2  One California Street, Suite 900
   San Francisco, CA 94111
3  Tel.: (415) 398-8700
   Fax: (415) 398-8704
4  Email: rrivas@finkelsteinthompson.com

5  Joseph N. Kravec, Jr. (*pro hac* to be filed)
   Wyatt A. Lison (*pro hac* to be filed)
6  **FEINSTEIN DOYLE**
     **PAYNE & KRAVEC, LLC**
7  429 Forbes Avenue
   Allegheny Building, Suite 1705
8  Pittsburgh, PA 15219
   Tel.: 412-281-8400
9  Fax: 412-281-1007
   Email: jkravec@fdpklaw.com
10         wlison@fdpklaw.com

11 Jason B. Adkins (*pro hac* to be filed)
12 **ADKINS, KELSTON & ZAVEZ, P.C.**
   90 Canal Street, 5th Floor
13 Boston, MA 02114
   Tel.: (617) 367-1040
14 Fax: (617) 742-8280
   Email: jadkins@akzlaw.com

15

16 *ATTORNEYS FOR PLAINTIFFS*
   *AND THE PROPOSED CLASSES*

17

18              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

19                  **FOR THE COUNTY OF SAN FRANCISCO**

20 GREG PERIEFF and LINDA CHESLOW,          **CASE NO.: C G C - 1 6 - 5 5 0 8 0 1**
   on behalf of themselves and all others
21 similarly situated,                       **CLASS ACTION**

22             Plaintiffs,

23                                           **CLASS ACTION COMPLAINT FOR**
             vs.                             **DAMAGES, DECLARATORY AND**
24                                           **INJUNCTIVE RELIEF**

25 CLIF BAR & COMPANY, a California
   corporation,                              **DEMAND FOR JURY TRIAL**
26
             Defendant.
27

28

---
CLASS ACTION COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF
Case No.:

ENDORSED
F I L E D
Superior Court of California
County of San Francisco

MAR – 4 2016

CLERK OF THE COURT
BY: _____ BOWMAN LIU
                    Deputy Clerk

Plaintiffs Greg Perieff and Linda Cheslow ("Plaintiffs"), by their attorneys, bring this class action against Defendant Clif Bar & Company ("Defendant" or "Clif") individually and on behalf of themselves and all others similarly situated and allege as follows based upon the investigation of their counsel:

## INTRODUCTION

1.     This is a consumer class action seeking damages, restitution, declaratory, and injunctive relief on behalf of California consumers against Clif based on Clif's unlawful labeling, sales, and distribution of mislabeled and misbranded LUNA brand energy and protein bars (collectively, "LUNA Bars")[1] and CLIF brand energy and protein bars (collectively, "CLIF Bars")[2]

---

[1] Plaintiffs' counsel's pre-suit investigation identified the following LUNA Bars currently being offered for sale that are subject to this action: LUNA Whole Nutrition Bars in these varieties (Blueberry Bliss, Caramel Nut Brownie, Chocolate Cupcake, Chocolate Dipped Coconut, Chocolate Peppermint Stick, Honey Salted Peanut, Iced Oatmeal Raisin, Lemon Zest, Nutz over Chocolate, Peanut Butter Cookie, S'mores, Vanilla Almond, and White Chocolate Macadamia) identified in Exhibit A hereto and LUNA Protein Bars in these varieties (Chocolate Chip Cookie Dough, Chocolate Coconut Almond, Chocolate Peanut Butter, Chocolate Salted Caramel, Lemon Vanilla, Mint Chocolate Chip, and Berry Greek Yogurt) identified in Exhibit B hereto. The LUNA Bars are offered for sale individually and in differently sized multicount boxes (e.g., 6-count boxes or 12-count boxes). The LUNA Bars' label statements as discussed in this Complaint are uniform on both the LUNA Bars' individual labels and the differently sized multicount boxes. Furthermore, the multicount boxes contain LUNA Bars bearing the individual LUNA Bars' labels identified in Exhibits A and B. Plaintiffs reserve the right to amend this Complaint to add additional Clif products that violate California law in the same ways alleged herein that Plaintiffs identify through further investigation or discovery.

[2] Plaintiffs' counsel's pre-suit investigation identified the following CLIF Bars currently being offered for sale that are subject to this action: CLIF Kid Organic Zbars in these varieties (Chocolate Brownie, Chocolate Chip, Iced Lemon Cookie, Iced Oatmeal Cookie, and S'mores) identified in Exhibit C hereto, CLIF Kid Protein Zbars in these varieties (Chocolate Chip, Chocolate Mint, and Peanut Butter Chocolate) identified in Exhibit D hereto, CLIF MOJO Sweet and Salty Trail Mix Bars (Dark Chocolate Almond Coconut, Mountain Mix, and Peanut Butter Pretzel) identified in Exhibit E hereto, and CLIF Organic Trail Mix Bars (Dark Chocolate Almond Sea Salt, Dark Chocolate Cherry Almond, Dark Chocolate Peanut Butter, Dark Chocolate Pomegranate Raspberry, Cranberry Almond, Wild Blueberry Almond, and Coconut Almond Peanut) identified in Exhibit F hereto. The CLIF Bars are offered for sale individually and in differently sized multicount boxes (e.g., 6-count boxes or 12-count boxes). The CLIF Bars' label statements as discussed in this Complaint are uniform on both the CLIF Bars' individual labels and the differently sized multicount boxes. Furthermore, the multicount boxes contain CLIF Bars bearing the individual CLIF Bars' labels identified in Exhibits C, D, E, and F. Plaintiffs reserve the right to amend this Complaint to add additional Clif products that violate California law in the same ways alleged herein that Plaintiffs identify through further investigation or discovery.

CLASS ACTION COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF
Case No.:

in California.  Clif holds itself out as the leading purveyor of "**_health_** and lifestyle bars,"[3] but the reality is that Clif misleads consumers by misrepresenting that its LUNA Bars and CLIF Bars are healthy and contain a nutrient profile consistent with dietary recommendations when, in fact, they do not meet the requirements for making such claims in violation of the Federal Food, Drug, and Cosmetic Act of 1938 ("FDCA"), 21 U.S.C. §§ 301–399f, the U.S. Food and Drug Administration's ("FDA") regulations implementing the FDCA, and California's Sherman Food, Drug and Cosmetic Law ("Sherman Law"), Cal. Health & Safety Code §§ 109875–111915.  Notably, the Sherman Law adopts all FDA food-labeling regulations promulgated pursuant to the FDCA.  Cal. Health & Safety Code § 110100(a).

2.    The FDA, after extensive fact-finding, determined that labeling claims representing that foods are healthy and contain beneficial nutrients (as defined herein, "Healthy Nutrient Content Claims") convey a potent message to consumers that the products are useful in maintaining a healthy diet.  *See* 59 Fed. Reg. 24,232-01, 24,233.  In other words, based on its examination of consumer data, the FDA determined that consumers interpret Healthy Nutrient Content Claims to mean that a food has a nutrient profile consistent with dietary recommendations.  To ensure that consumers are not deceived or misled by labeling that represents food as being healthy, the FDA promulgated regulations including, *inter alia*, 21 C.F.R. § 101.65(d), that allow Healthy Nutrient Content Claims to be made only on food products that satisfy a specific nutrient profile.  None of Clif's LUNA Bars or CLIF Bars at issue satisfy that required nutrient profile.

3.    Specifically, 21 C.F.R. § 101.65(d) requires that foods whose labels make Healthy Nutrient Content Claims contain no more than minimal levels of total fat and saturated fat.  Foods with Healthy Nutrient Content Claims in violation of this regulation by extension violate the FDCA, 21 U.S.C. §§ 343(a)(1) & (r), and the Sherman Law, Cal. Health & Safety Code §§ 109930, 110100(a) & 110670.

---

[3]  Clif Bar & Co., The Clif Bar & Company Story, http://www.clifbar.com/article/clif_bar_company_story (emphasis added).

CLASS ACTION COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF
Case No.:

4.    This case concerns Clif's ongoing use of Healthy Nutrient Content Claims on the labels of its LUNA Bars and CLIF Bars containing higher levels of total fat and/or saturated fat than is consistent with dietary recommendations in violation of 21 C.F.R. § 101.65(d), the FDCA, and the Sherman Law.

5.    The representations that Clif's LUNA Bars and CLIF Bars are healthy are false, misleading, and material to consumers' decisions to purchase Clif's LUNA Bars and CLIF Bars.

6.    Clif's conduct alleged herein is false, misleading, and unlawful in violation of the following provisions of California's Sherman Law: Cal. Health & Safety Code § 110660 (prohibiting false and misleading labeling), § 110670 (prohibiting nutrient content claims not allowable under FDCA and FDA regulations), § 110760 (prohibiting manufacture, sale, delivery, etc. of misbranded food), and §§ 109930 and 110100(a) (adopting FDCA regulations violated as described below), as well as other applicable state consumer laws.  Clif's identical conduct that violates the Sherman Law and other applicable state laws also violates the FDCA, 21 U.S.C. § 343(a)(1) (prohibiting false and misleading labeling), § 343(r) (prohibiting nutrient content claims not defined by FDA regulations), and § 331(a) (prohibiting introduction or delivery for introduction into interstate commerce of misbranded food).  This identical conduct serves as the sole factual basis for each state-law cause of action brought by this Complaint, and Plaintiffs do not seek to enforce any of the state-law claims raised herein to impose any standard of conduct that exceeds that which would violate the FDCA and regulations adopted pursuant thereto.  Thus, Plaintiffs' state-law claims for state-law violations seek to enforce the same standard of conduct required by federal law, and Plaintiffs' state-law claims are based upon Clif's breach of that standard of conduct.  For any of Plaintiffs' state-law causes of action, the allegations supporting those causes of action and any forms of relief sought for those state-law causes of action, Plaintiffs expressly disclaim any attempt to hold Clif to a higher standard of conduct than what is required under federal law and do not seek any form of relief based on conduct exceeding that which is required under federal law.  All state-law causes of action asserted in this Complaint, the allegations supporting those state-law causes of action asserted herein, and any forms of relief sought for those state-law causes of action asserted herein shall be read consistent with the limitations set forth in this paragraph.

3

7.      Accordingly, Plaintiffs bring this action on behalf of California consumers to declare that Clif's LUNA Bars and CLIF Bars are misbranded and to enjoin Clif from continuing to sell the LUNA Bars and CLIF Bars in California in a manner that violates 21 C.F.R. § 101.65(d), the FDCA, and the Sherman Law, and mislead consumers, through their improper use of Healthy Nutrient Content Claims (as more fully defined herein, the "LUNA Bars Declaratory/Injunctive Class" and the "CLIF Bars Declaratory/Injunctive Class"), and to recover damages and restitution on behalf of California consumers who purchased Clif's LUNA Bars and CLIF Bars in California (as more fully defined herein, the "LUNA Bars Damages Class" and the "CLIF Bars Damages Class").

## THE PARTIES

8.      Plaintiff Greg Perieff is a natural person and a citizen of the State of California, residing in San Francisco County.  Between February 2013 and September 2015, Plaintiff Perieff purchased the following CLIF Bars:

        a.   CLIF Kid Organic Chocolate Brownie Zbar;

        b.   CLIF Kid Organic Chocolate Chip Zbar;

        c.   CLIF Kid Organic Iced Lemon Cookie Zbar;

        d.   CLIF Kid Organic Iced Oatmeal Cookie Zbar;

        e.   CLIF Kid Organic S'mores Zbar;

        f.   CLIF Kid Chocolate Chip Protein Zbar;

        g.   CLIF Kid Chocolate Mint Protein Zbar;

        h.   CLIF Kid Peanut Butter Chocolate Protein Zbar;

        i.   CLIF MOJO Sweet and Salty Dark Chocolate Almond Coconut Trail Mix Bar;

        j.   CLIF MOJO Sweet and Salty Mountain Mix Trail Mix Bar; and

        k.   CLIF MOJO Sweet and Salty Peanut Butter Pretzel Trail Mix Bar.

Plaintiff Perieff purchased these CLIF Bars from retail stores, including Target, near his home in San Francisco, California; Target in Colma, California; and Walmart in Sonora, California.  Plaintiff Perieff purchased approximately one to two multicount boxes of Clif's CLIF MOJO Sweet and Salty Trail Mix Bars for himself every month between February 2013 and September 2013.  In addition, Plaintiff Perieff purchased approximately one to two multicount boxes of Clif's CLIF Kid Organic

4

Zbars and CLIF Kid Protein Zbars every month between February 2013 and September 2013. Furthermore, Plaintiff Perieff purchased approximately one to two multicount boxes of Clif's CLIF Kid Organic Zbars and CLIF Kid Protein Zbars every two months between January 2014 and September 2015.  Plaintiff Perieff purchased Clif's CLIF Kid Organic Zbars and CLIF Kid Protein Zbars for his young cousins, whom he regularly babysat in 2013, and with whom he regularly attends family events.  Clif's CLIF MOJO Sweet and Salty Trail Mix Bars that Plaintiff Perieff purchased all bore Healthy Nutrient Content Claims because they were labeled as containing nutrients that are "good for . . . our bodies," together with one or more nutrient statements (e.g., "8g Protein" or "3g Fiber").  Clif's CLIF Kid Organic Zbars and CLIF Kid Protein Zbars that Plaintiff Perieff purchased all bore Healthy Nutrient Content Claims because they were labeled as being "nutritious" and/or "wholesome," and/or containing ingredients "to keep kids . . . growing," together with one or more nutrient statements (e.g., "3g Fiber," "5g Protein," or "Excellent Source of Calcium").  Plaintiff Perieff read and relied on the Healthy Nutrient Content Claims displayed on the labeling of the CLIF Bars that he purchased and understood the Healthy Nutrient Content Claims as indicating that the CLIF Bars would help him or his young cousins maintain healthy dietary practices because of their nutrient content.  In fact, the labeling of Clif's CLIF Bars reinforces the impression that the product lines are all healthy and nutritious when, in reality, they all fail to meet the regulatory requirements to make such claims.  Had Plaintiff Perieff known the truth that the CLIF Bars' Healthy Nutrient Content Claims violated the FDA's requirements because the CLIF Bars had more total fat and/or saturated fat than permitted for products making Healthy Nutrient Content Claims, this would have materially affected his purchasing considerations in at least one of the following ways, namely Plaintiff Perieff: (i) would not have purchased the CLIF Bars; (ii) would have been willing to pay less for the CLIF Bars that he purchased; (iii) would have purchased a lesser quantity of the CLIF Bars that he purchased: (iv) would have purchased alternative products that he felt were truly useful in maintaining healthy dietary practices; and/or (v) would have purchased a similar product that was less expensive.

CLASS ACTION COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF
Case No.:

9.    Plaintiff Linda Cheslow is a natural person and a citizen of the State of California, residing in Sonoma County.    Between February 2013 and December 2015, Plaintiff Cheslow purchased the following LUNA Bars and CLIF Bars:

a.    LUNA Whole Nutrition Bars Caramel Nut Brownie;

b.    LUNA Whole Nutrition Bars Chocolate Cupcake;

c.    LUNA Whole Nutrition Bars Chocolate Dipped Coconut;

d.    LUNA Whole Nutrition Bars Honey Salted Peanut;

e.    LUNA Whole Nutrition Bars Iced Oatmeal Raisin;

f.    LUNA Whole Nutrition Bars Nutz over Chocolate;

g.    LUNA Whole Nutrition Bars S'mores;

h.    LUNA Whole Nutrition Bars Vanilla Almond;

i.    LUNA Whole Nutrition Bars White Chocolate Macadamia;

j.    LUNA Protein Bars Chocolate Chip Cookie Dough;

k.    LUNA Protein Bars Chocolate Coconut Almond;

l.    LUNA Protein Bars Chocolate Salted Caramel;

m.    LUNA Protein Bars Mint Chocolate Chip;

n.    CLIF MOJO Sweet and Salty Dark Chocolate Almond Coconut Trail Mix Bar;

o.    CLIF MOJO Sweet and Salty Mountain Mix Trail Mix Bar;

p.    CLIF Dark Chocolate Almond Sea Salt Organic Trail Mix Bar;

q.    CLIF Dark Chocolate Cherry Almond Organic Trail Mix Bar;

r.    CLIF Dark Chocolate Pomegranate Raspberry Organic Trail Mix Bar;

s.    CLIF Cranberry Almond Organic Trail Mix Bar; and

t.    CLIF Coconut Almond Peanut Organic Trail Mix Bar.

Plaintiff Cheslow purchased these LUNA Bars and CLIF Bars from retail stores including Target, Whole Foods, Safeway, Raley's, and Grocery Outlet near her home in Santa Rosa, California, as well as from retail stores including Safeway in San Francisco, California.    When shopping near her home in Santa Rosa, California, Plaintiff Cheslow purchased approximately two to three of Clif's

6

LUNA Bars every week between February 2013 and September 2015, and approximately one of Clif's CLIF Bars every one to two weeks between February 2013 and December 2015. When shopping in San Francisco, California, Plaintiff Cheslow purchased approximately one of Clif's LUNA Bars every two months between February 2013 and December 2015, and approximately three of Clif's CLIF Bars every year between February 2013 and December 2015. In addition, when shopping near her home in Santa Rosa, California, Plaintiff Cheslow purchased one multicount box of Clif's LUNA Bars approximately every year between February 2013 and September 2015, and approximately one to two multicount boxes of Clif's CLIF Bars every year between February 2013 and December 2015. Clif's LUNA Bars that Plaintiff Cheslow purchased all bore Healthy Nutrient Content Claims because they were labeled as being "Whole Nutrition Bar[s] for Women," containing nutrients "essential to women's health" and/or "importan[t] to many women seeking to maintain their health," and/or providing "the nutrition we [women] need to stay strong," together with one or more nutrient statements (e.g., "9g Protein" or "4g Fiber"). Clif's CLIF Bars that Plaintiff Cheslow purchased all bore Healthy Nutrient Content Claims because they were labeled as being "good for . . . our bodies," together with one or more nutrient statements (e.g., "8g Protein" or "3g Fiber"). Plaintiff Cheslow read and relied on the Healthy Nutrient Content Claims displayed on the labeling of the LUNA Bars and CLIF Bars that she purchased and understood the Healthy Nutrient Content Claims as indicating that the LUNA Bars and CLIF Bars would help her maintain healthy dietary practices because of their nutrient content. In fact, the labeling of Clif's LUNA Bars and CLIF Bars reinforces the impression that the product lines are all healthy and nutritious when, in reality, they all fail to meet the regulatory requirements to make such claims. Had Plaintiff Cheslow known the truth that the LUNA Bars' and CLIF Bars' Healthy Nutrient Content Claims violated the FDA's requirements because the LUNA Bars and CLIF Bars had more total fat and/or saturated fat than permitted for products making Healthy Nutrient Content Claims, this would have materially affected her purchasing considerations in at least one of the following ways, namely Plaintiff Cheslow: (i) would not have purchased the LUNA Bars and CLIF Bars; (ii) would have been willing to pay less for the LUNA Bars and CLIF Bars that she purchased; (iii) would have purchased lesser quantities of the LUNA Bars and CLIF Bars that she purchased: (iv) would have purchased

CLASS ACTION COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF
Case No.:

1    alternative products that she felt were truly useful in maintaining healthy dietary practices; and/or

2    (v) would have purchased a similar product that was less expensive.

3        10.    Defendant Clif Bar & Company is and at all material times has been a California

4    corporation with its headquarters in Emeryville, California.[4]  Clif manufacturers a variety of energy

5    and protein bars and touts itself as "a category leader among ***health*** and lifestyle bars," having

6    experienced "double-digit, compounded annual growth for the past 10 years."[5]  Apart from the

7    LUNA Bars' labeling as described throughout this Complaint, Clif promotes its LUNA Bars as

8    providing nutrients, including calcium, iron, folic acid, and Vitamin D, that are essential to women's

9    health.[6]  In addition, apart from the CLIF Bars' labeling as described throughout this Complaint, Clif

10    promotes its CLIF Kid Organic Zbars and CLIF Kid Protein Zbars as containing nutrients

11    particularly beneficial to children to help them grow.[7]  Finally, apart from the CLIF Bars' labeling as

12    described throughout this Complaint, Clif promotes its MOJO Sweet and Salty Trail Mix Bars and

13    CLIF Organic Trail Mix Bars as being good for consumers' bodies.[8]  Clif was reported to be valued

14    at $340 million in April 2013.[9]

15

16    [4] Cal. Sec'y of State, Business Search, http://kepler.sos.ca.gov/ (search "Corporation Name" for "Clif Bar & Company"; then follow "CLIF BAR & COMPANY" hyperlink).

17
18    [5] Clif Bar & Co., The Clif Bar & Company Story, http://www.clifbar.com/article/ clif_bar_company_story (emphasis added).

19
20    [6] *See, e.g.*, Clif Bar & Co., LUNA Feeds Women's Need for a Nutritious and Indulgent Snack with New LUNA Protein Flavors, Jan. 14, 2014, http://www.clifbar.com/text/lunar-feeds-womens-need-for-a-nutritious-and-indulgent-snack-with-new-luna-protein-flavors ("LUNA ***nourishes women*** with delicious snacks made from 70 percent organic ingredients and with the CORE 4 vitamins and minerals ***essential to women's health***—calcium, iron, folic acid and vitamin D.") (emphasis added).

21
22    [7] *See, e.g.*, Clif Bar & Co., Clif Kid Zbar, http://www.clifbar.com/products/clif-kid/zbar ("An organic baked whole grain snack made with a ***nutritious blend of carbohydrates, fiber, protein, and fat to maintain kids' energy*** . . . so kids can keep zipping and zooming along."); Clif Bar & Co., Zbar Protein, http://www.clifbar.com/products/clif-kid/zbar-protein ("A delicious whole grain protein snack made with ***nutritious building blocks for kids' growing bodies*** . . . so kids can keep zipping and zooming along.") (All emphasis added).

23
24    [8] *See, e.g.*, Clif Bar & Co., CLIF Mojo Sweet & Salty Trail Mix Bar, http://www.clifbar.com/products/mojo/sweet-salty ("Ready to go whenever and wherever you are, CLIF MOJO combines simple and organic ingredients that are ***good for both our bodies*** and the planet."); Clif Bar & Co., CLIF Organic Trail Mix Bar – Dark Chocolate, http://www.clifbar.com/ products/organic-trail-mix-bar/dark-chocolate ("CLIF Organic Trail Mix Bar is made for mixing it up and discovering all the good stuff the day has to offer.  Combining simple and organic ingredients that are ***good for both our bodies*** and the planet, our trail mix bar comes in flavors for just about every occasion no matter

25
26
27
28

8

CLASS ACTION COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF
Case No.:

**JURISDICTION AND VENUE**

11.    This Court has jurisdiction over the parties, and venue is proper in San Francisco County Superior Court.

12.    This Court has jurisdiction and venue pursuant to Cal. Civ. Proc. Code §§ 395.5 & 410.10 and Cal. Civ. Code § 1780(d) over the claims raised in this Complaint for the following reasons: (i) Clif regularly sells, advertises, markets, and/or distributes the LUNA Bars and CLIF Bars in San Francisco County and throughout the State of California; (ii) a substantial portion of the underlying transactions and events complained of herein occurred and affected persons and entities that reside in San Francisco County; (iii) Plaintiffs are citizens and residents of California; (iv) Plaintiff Perieff resides in San Francisco County; and (v) Plaintiffs each purchased Clif products at issue in this Complaint in California, including San Francisco County.  Attached hereto as Exhibit G are Plaintiffs' declarations establishing that venue is appropriate in San Francisco County pursuant to Cal. Civ. Code § 1780(d).

13.    There is no jurisdiction in any U.S. District Court over the claims raised in this Complaint.  There is no "federal question" U.S. District Court jurisdiction because Plaintiffs' claims do not arise under the Constitution, laws, or treaties of the United States.  28 U.S.C. § 1331.  There is no U.S. District Court jurisdiction under the general "diversity of citizenship" statute because Plaintiffs, members of the Classes, and Clif are, and at the times of the transactions at issue were, California citizens.  28 U.S.C. § 1332(a)(1).  There is no U.S. District Court jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), Pub. Law No. 109-2, 119 Stat. 4 (2005), because no member of the Classes is a citizen of a state different from Clif since Clif, Plaintiffs, and members of the Classes are, and at the times of the transactions at issue were, California citizens.  28 U.S.C.

---

where the trail takes you."); Clif Bar & Co., CLIF Organic Trail Mix Bar – Fruit & Nut, http://www.clifbar.com/products/organic-trail-mix-bar/fruit-nut ("CLIF Organic Trail Mix Bar is made for mixing it up and discovering all the good stuff the day has to offer.  Combining simple and organic ingredients that are ***good for both our bodies*** and the planet, our trail mix bar comes in flavors for just about every occasion no matter where the trail takes you.") (All emphasis added).

[9] Matt Villano, "Clif Bar Founders Get into Venture Capital," Entrepreneur Media, Inc., Apr. 15, 2013, http://www.entrepreneur.com/article/225819.

CLASS ACTION COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF
Case No.:

§ 1332(d)(2). If Clif contends that jurisdiction is appropriate under the CAFA as a threshold matter, U.S. District Court jurisdiction still is lacking because the mandatory exceptions codified at 28 U.S.C. § 1332(d)(4)(A) and (B) apply because (a) greater than two-thirds of the members of the Classes are California citizens (and were California citizens at the times of the transactions at issue), Clif is the sole defendant from whom significant relief is sought by members of the Classes, Clif's alleged conduct forms a significant basis for the claims asserted by the Classes, Clif is a California citizen (and was a California citizen at the times of the transactions at issue), and no other class action has been filed concerning Clif's use of Healthy Nutrient Content Claims in the last three years; and/or (b) at least two-thirds of the members of the Classes and Clif are California citizens (and were California citizens at the times of the transactions at issue).

**CALIFORNIA AND FEDERAL LAW DEFINE NUTRIENT CONTENT CLAIMS AND PROHIBIT THEIR USE ON FOODS' LABELS EXCEPT WHERE EXPRESSLY APPROVED BY THE FDA**

14.    The FDCA provides that a food is "misbranded," among other things, "if its labeling is false or misleading in any particular," or if it bears an unauthorized "nutrient content claim." 21 U.S.C. § 343 (a)(1) & (r). The FDCA and California law prohibit selling or distributing misbranded food. *Id.* § 331(a); Cal. Health & Safety Code § 110760. California's Sherman Law incorporates all of the FDA's food-labeling regulations promulgated pursuant to the FDCA. Cal. Health & Safety Code § 110100(a).

15.    The FDCA and California Law prohibit all nutrient content claims on foods' labels or labeling, except those that the FDA has expressly authorized by regulation (or which are otherwise exempted). 21 U.S.C. § 343(r)(1)(A); *see also* 56 Fed. Reg. 60,421-01, 60,422 ("This provision [21 U.S.C. § 343(r)(1)(A)] states that a food is misbranded if it bears a claim in its label or labeling that either expressly or implicitly characterizes the level of any nutrient of the type required to be declared as part of nutrition labeling, unless such claim has been specifically defined (or otherwise exempted) by regulation."); Cal Health & Safety Code § 110670 ("Any food is misbranded if its labeling does not conform with the requirements for nutrient content or health claims as set forth in Section 403(r) (21 U.S.C. Sec. 343(r)) of the [FDCA] and the regulations adopted pursuant thereto.")

10

16.     A "nutrient content claim," whether express or implied, is any statement on a food's label or labeling that characterizes the level of certain nutrients. 21 C.F.R. § 101.13(b). One type of "implied nutrient content claim" is a statement suggesting that a food, because of its nutrient content, may be useful in maintaining healthy dietary practices and made in association with an explicit claim or statement about a nutrient (e.g., "healthy, contains 3 grams of fat"). *Id*. § 101.13(b)(2)(ii).

17.     This case is about one specific type of implied nutrient content claim that utilizes the term "healthy," its derivative "health," or synonyms of "healthy" ("Healthy Nutrient Content Claims"). A Healthy Nutrient Content Claim is an implied nutrient content claim that: (1) is made in connection with an express or implied statement about a nutrient; (2) utilizes the term "healthy," a derivative thereof, or a synonym thereof; and (3) suggests that a food may help consumers maintain healthy dietary practices because of its nutrient content (e.g., "healthy, contains 3 grams of fat"). *Id.* § 101.65(d)(1)(i)–(ii).

18.     Derivatives of "healthy" that may be used in Healthy Nutrient Content Claims include "health," "healthful," "healthfully," "healthfulness," "healthier," "healthiest," "healthily," and "healthiness." *Id.* § 101.65(d)(2).

19.     Synonyms of "healthy" that signify Healthy Nutrient Content Claims include "wholesome," "nutritious," "good for you," and "food for today's diet." *See* 59 Fed. Reg. 24,232-01, 24,236.

20.     Pursuant to its statutory authority, the FDA, after notice and comment, promulgated 21 C.F.R. § 101.65(d) governing Healthy Nutrient Content Claims. While its "under the hood" minutiae vary, the FDA's rule is straightforward in application: Healthy Nutrient Content Claims may be made only by foods, among other things, not exceeding established maximum levels of total fat and saturated fat. 21 C.F.R. § 101.65(d)(2)(i).

21.     The minutiae of the Healthy Nutrient Content Claim requirements depend on the type of food making the claim. All of Clif's LUNA Bars and CLIF Bars at issue in this case are subject to the FDA's "catch-all" category (*id.* § 101.65(d)(2)(i)(F)) because they do not fall within any other specific category identified in 21 C.F.R. § 101.65(d)(2)(i)(A)–(E), i.e., they are not raw fruits or vegetables (*id.* at subsection (A)), frozen or canned fruits or vegetables (*id.* at subsection (B)),

11

enriched cereal-grain products (*id.* at subsection (C)), seafood or game meat (*id.* at subsection (D)), or "meal products" or "main dish products"[10] (*id.* at subsection (E)).

22.    As foods subject to the FDA's "catch-all" category (*id.* § 101.65(d)(2)(i)(F)), the Healthy Nutrient Content Claim requirements applicable to Clif's LUNA Bars and CLIF Bars and relevant to Plaintiffs' claims are as follows:

    a.    Each LUNA Bar and CLIF Bar must meet the FDA's definition for "low fat" defined in 21 C.F.R. § 101.62(b)(2).  Specifically, Clif's LUNA Bars and CLIF Bars must contain no more than 3 grams of fat per 40 grams of total weight.  *See id.* § 101.65(d)(2)(i)(F) (requiring "catch-all" foods to be "[l]ow fat as defined in § 101.62(b)(2)"); *id.* § 101.62(b)(2) (defining "low fat" for foods whose reference amounts customarily consumed ("RACCs") are greater than 30 grams, in part, as "contain[ing] 3 g or less of fat per reference amount customarily consumed"); *id.* § 101.12(b) (providing RACC of 40 grams for "[g]rain-based bars with or without filling or coating, e.g., breakfast bars, granola bars, rice cereal bars"); and

    b.    Each LUNA Bar and CLIF Bar must meet the FDA's definition for "low saturated fat" defined in 21 C.F.R. § 101.62(c)(2).  Specifically, Clif's LUNA Bars and CLIF Bars must contain no more than 1 gram of saturated fat per 40 grams of total weight.  *See id.* § 101.65(d)(2)(i)(F) (requiring "catch-all" foods to be "[l]ow saturated fat as defined in § 101.62(c)(2)"); *id.* § 101.62(c)(2) (defining "low saturated fat," except for meal products and main dish products, as "contain[ing] 1

---

[10] None of Clif's LUNA Bars or CLIF Bars are "meal products" or "main dish products" because no LUNA Bar or CLIF Bar weighs at least six ounces per labeled serving. 21 C.F.R. § 101.13(*l*)(1)(i) & (m)(1)(i); *see* Exhibit A, LUNA Whole Nutrition Bars' Labels (identifying grams per labeled serving in Nutrition Facts on back labels); Exhibit B, LUNA Protein Bars' Labels (identifying grams per labeled serving in Nutrition Facts on back labels); Exhibit C, CLIF Kid Organic Zbars' Labels (identifying grams per labeled serving in Nutrition Facts on back labels); Exhibit D, CLIF Kid Protein Zbars' Labels (identifying grams per labeled serving in Nutrition Facts on back labels); Exhibit E, CLIF MOJO Sweet and Salty Trail Mix Bars' Labels (identifying grams per labeled serving in Nutrition Facts on back labels); Exhibit F, CLIF Organic Trail Mix Bars' Labels (identifying grams per labeled serving in Nutrition Facts on back labels); *see also* Wight Hat Ltd., Metric Conversions: Grams to Ounces, http://www.metric-conversions.org/weight/grams-to-ounces.htm (stating that one ounce is equal to 28.349 grams).

CLASS ACTION COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF
Case No.:

1    g or less of saturated fatty acids per reference amount customarily consumed");

2    *id.* § 101.12(b) (providing RACC of 40 grams for "[g]rain-based bars with or

3    without filling or coating, e.g., breakfast bars, granola bars, rice cereal bars").

**THE FDA, AFTER FACT-FINDING, DETERMINED THAT
HEALTHY NUTRIENT CONTENT CLAIMS ARE MATERIAL TO CONSUMERS AND
CONVEY THE MESSAGE THAT FOOD CONTRIBUTES TO A HEALTHY DIET**

7    23.    Prior to promulgating 21 C.F.R. § 101.65(d) governing Healthy Nutrient Content

8    Claims, the FDA conducted extensive research and fact-finding.  The FDA published an initial

9    proposal for defining the term "healthy" (56 Fed. Reg. 60,421), a proposed rule (58 Fed. Reg. 2944),

10   and a final rule (59 Fed. Reg. 24,232-01).  The FDA solicited, received, and considered comments in

11   response to its initial proposal for defining the term "healthy" and the proposed rule.  In response to

12   the proposed rule, the FDA received comments from approximately fifty (50) sources including

13   consumers, consumer organizations, professional organizations, state and local government

14   agencies, industry, and industry trade associations.  59 Fed. Reg. 24,232-01, 24,232.

15   24.    The FDA considered polls and surveys evaluating consumers' understanding about

16   Healthy Nutrient Content Claims.  *Id.* at 24,232–33.  The FDA found that this data showed that

17   "healthy" conveys a strong message to consumers about the nutrient content of a food and, further,

18   that consumers associate "healthy" with generally recommended nutrient levels.  *Id.* at 24,233.

19   Thus, the FDA found the comments that it received in response to its proposal to define the term

20   "healthy" supported the finding that foods labeled as "healthy" "should be those that can be

21   consumed to assist consumers in maintaining healthy dietary practices, that is, in achieving a total

22   diet that conforms to current dietary recommendations."  *Id.*  Accordingly, the FDA found that

23   Healthy Nutrient Content Claims are distinguishable from other nutrient content claims because they

24   uniquely characterize "both the level of the nutrient in a food and, derivatively, the food itself."  *Id.*

25   25.    The FDA also concluded, based on the information submitted with comments in

26   response to its proposed rule, that consumers understand the term "healthy" to carry particular

27   weight when it is made in conjunction with a specific claim about a nutrient.  The FDA found that

28   consumers understand "healthy" to mean "that the food that bears the term necessarily has a nutrient

13

profile that would be helpful to consumers in structuring a diet that conforms to dietary guidelines" when the term "healthy" is "presented in a context that explicitly or implicitly suggests that the food has a particular nutrient profile." *Id.* at 24,235. Thus, the FDA found that a Healthy Nutrient Content Claim is one where the term "healthy" "appears in association with an explicit or implicit claim or statement about a nutrient[.]" *Id.*

26.    Importantly, the FDA also found that "***consumers may tend to rely on the 'healthy' claim rather than reading specific information on the label***." *Id.* at 24,236 (emphasis added). Thus, the FDA emphasized that it was defining the requirements for Healthy Nutrient Content Claims "in such a way that ensures that, ***even if consumers do not read the full label, foods that bear the term will be useful in structuring a healthy diet***." *Id.* (emphasis added).

27.    The FDA also found that Healthy Nutrient Content Claims can arise even where the "healthy" statement and the nutrient claim do not necessarily appear adjacent or in direct relation to each other. *See id.* at 24,235 (finding nutrient statement on label of food with "healthy" in brand name would give rise to Healthy Nutrient Content Claim).

28.    Furthermore, the FDA found that "derivatives of 'healthy' have the same general meaning and connotation as this term and, thus, when used in food labeling may be construed by consumers to imply that the products on which they appear will be helpful in maintaining healthy dietary practices." *Id.* The FDA therefore chose to regulate derivatives of "healthy," including "health," when they are used in a nutritional context in food labeling, in the same manner as "healthy." *Id.*[11]

---

[11] The FDA has sent multiple warning letters to packaged food manufacturers for violations of the Healthy Nutrient Content Claim requirements based on statements using the derivative "health" *alone*, and not "healthy." *See, e.g.*, FDA, Warning Letter to CAW Industries, Inc., Jan. 31, 2012, http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2012/ucm290046.htm (citing statements, "ha[ve] 19 trace minerals such as iron, manganese, copper, iodine, zinc, calcium, potassium, and selenium and many others that are essential to maintaining optimum health," and, "has the same concentration of the 19 trace minerals found in the [product]. These trace minerals such as iron, manganese, copper, iodine, zinc, calcium, potassium, and selenium and many others found in the [product] are essential to maintaining optimum health"); FDA, Warning Letter to North Dallas Big Honey Company, June 24, 2013, http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/ 2013/ucm358641.htm (citing statements, "Many people are looking for the health benefits of RAW honey . . . full of antioxidants . . . vitamins, minerals and enzymes," and, "(L)ove its health benefits . . . honey is loaded with antioxidants . . . vitamins . . . minerals . . .").

CLASS ACTION COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF
Case No.:

29.     The FDA also found that terms such as "wholesome," "nutritious," and "good for you" can be synonymous with "healthy" and thus constitute Healthy Nutrient Content Claims when used in connection with a nutrient statement. *Id.* at 24,236. Despite "recogniz[ing] that terms such as 'nutritious,' 'wholesome,' and 'good for you' can be implied nutrient content claims when they appear in a nutritional context on a label or in labeling," the FDA did not find that these terms "are necessarily synonymous with 'healthy.'" *Id.* The FDA therefore declined to expressly define these terms as synonymous with "healthy" under all circumstances because "[t]he comments to the 'healthy' proposal have not provided the agency with the information that it would need to develop definitions or to establish these terms as synonyms for the term 'healthy.'" *Id.* Nevertheless, the FDA's interpretation that such terms can be synonymous with its definition of "healthy" and thus subject to the requirements for Healthy Nutrient Content Claims is demonstrated by the FDA's recent regulatory action against a food manufacturer for labeling its product with the "***implied nutrient content claim 'good for you,' which is an unauthorized synonym for 'healthy.'***" Exhibit H, FDA, Warning Letter to Minerva Dairy, Inc., Oct. 9, 2014 (emphasis added), *available at* http://www.fda.gov/ICECI/ EnforcementActions/WarningLetters/2014/ucm418768.htm.

30.     In sum, the FDA's factual findings provide in pertinent part as follows:

> Taken together, . . . establish not only that "healthy" conveys a strong message about the nutrient content of a food, but that consumers associate it with the nutrient levels that have generally been recommended over the past few years.

> The agency finds, therefore, that the fundamental purpose of a "healthy" claim is to highlight those foods that, based on their nutrient levels, are particularly useful in constructing a diet that confirms to current dietary guidelines.

59 Fed. Reg. 24,232-01, 24,233.

31.     The FDA also made findings with regard to the levels of total fat and saturated fat that consumers expect foods bearing Healthy Nutrient Content Claims to contain. The FDA found requiring foods bearing Healthy Nutrient Content Claims to be low in fat and low in saturated fat to be appropriate "because these restrictions recognize the need to reduce dietary intake of fat and saturated fat . . . [and] will assist consumers in constructing a total diet that is consistent with dietary recommendations." *Id.* at 24,238.

15

CLASS ACTION COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF
Case No.:

32.    Furthermore, while the FDA declined to extend its "healthy" definition applicable to Healthy Nutrient Content Claims to all uses of "healthy" on a food's label where not made in conjunction with a nutrient content claim, such "healthy" statements still would render a food misbranded if they render the food's labeling false or misleading.  21 U.S.C. § 343(a)(1) (providing food is misbranded if its labeling is false or misleading "in any particular"); *see also id.* at 24,235 ("FDA finds that under section 403(a) of the act, it has ample authority to ensure that 'healthy' is not used in a misleading manner, even when it is not used in a nutritional context.").

### CONGRESS AND THE FDA DETERMINED THAT ALL NUTRIENT CONTENT CLAIMS ARE MATERIAL TO CONSUMERS BECAUSE CONSUMERS RELY ON THEM IN MAKING FOOD CHOICES

33.    Congress amended the FDCA by enacting the Nutrition Labeling and Education Act of 1990 ("NLEA"), Pub. Law No. 101-535, 104 Stat. 2353 (1990), in part, to govern nutrient content claims to help consumers make good nutrition choices and to protect them from being misled by the many confusing and contradictory nutrient content claims then appearing on foods' labels.  NLEA made "the most significant changes in food labeling law since the passage of the [FDCA]."  56 Fed. Reg. 60,421-01, 60,422.  The FDA described the impetus behind the NLEA:

> With the provisions of the 1990 amendments that govern nutrient content claims, Congress sought to put an end to the proliferation of confusing and contradictory nutrient content claims. . . .  In order to assist consumers in improving their eating habits, Congress devised a scheme to ensure that nutrient content claims in food labeling will help consumers to make good nutrition choices, not mislead them.

58 Fed. Reg. 2302-01, 2393 (citations to *Congressional Record* omitted).

34.    Congress acted because it considered the confusing, contradictory, ambiguous, and unregulated nutrient content claims appearing on foods' labels prior to the NLEA to be harmful to the public.  As the FDA described:

> Congress considered existing labeling practices to be harmful to the public because of the "confusing" and "misleading" nutrient content claims made by many manufacturers.
>
> . . .
>
> By enacting the 1990 amendments, Congress sought to ensure that food labeling, including express and implied nutrient content claims, would be accurate, uniform,

16
CLASS ACTION COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF
Case No.:

and "based on science." . . .  With respect to nutrient content claims, the principal problem that Congress sought to correct was the use of ambiguous, undefined claims like "light" and "low." . . .  Experience had shown that consumers were being misled because these terms were being used differently by different manufacturers. . . . Congress recognized that consumers were being hampered in their attempts to achieve a healthy diet by confusing implied nutrient content claims like "light."

. . .

Particular attributes of unregulated nutrition claims on the food label make them inherently misleading.  Because nutrition claims are of great importance to the public, they have a greater potential to be deceptive: Representations relating to a product to an issue of public concern as a means to induce purchases may take on exaggerated importance in the public mind and thus be more likely to mislead.

*Id.* at 2393 & 2394 (citations to *Congressional Record* omitted).

35.    With the NLEA, Congress chose to address the problem of harmful, confusing, and misleading nutrient content claims and ensure that nutrient content claims are not confusing, contradictory, or misleading by empowering the FDA to regulate nutrient content claims on foods' labels.  Only nutrient content claims defined by the FDA would be permitted on foods' labels:

Because of the misleading character of unregulated, nonstandardized nutrient content claims, Congress legislated that any claim that is not consistent with FDA regulations misbrands a food. . . .  By taking this approach, Congress chose to permit only those nutrient content claims that FDA defines or approves, effectively recognizing that unregulated claims mislead the public.

*Id.* at 2394; *see also* 21 U.S.C. § 343(r)(1)(A) (providing that a food is misbranded if its label or labeling bears a nutrient content claim, except those that the FDA has expressly authorized by regulation or which are otherwise exempted); Open Letter to Industry from Dr. Margaret A. Hamburg, FDA Commissioner (Mar. 3, 2010) [hereinafter "Hamburg Letter"], *available at* http://www.fda.gov/ Food/IngredientsPackagingLabeling/LabelingNutrition/ucm202733.htm ("[W]e urged food manufacturers to examine their product labels in the context of the provisions of the [FDCA] that prohibit false or misleading claims and restrict nutrient content claims to those defined in FDA regulations.").

36.    Charged with this mission, the FDA carefully crafted its regulations to ensure that nutrient content claims are meaningful to consumers.  *See* 59 Fed. Reg. 47,072-01, 47,077 ("In defining terms for specific nutrient content claims, the agency carefully considered each claim to ensure that it would be meaningful to consumers."); 58 Fed. Reg. 2448-01, 2448 ("FDA has

17

1  carefully considered each nutrient content claim to ensure that these definitions will be meaningful

2  to consumers.").

3      37.   Even before the NLEA, the FDA "ha[d] a long history of interest in prescribing label

4  statements concerning the dietary properties of food," including nutrient content claims.  56 Fed.

5  Reg. 60,421-01, 60,421.

6      38.   The FDA has described nutrient content claims as one of the "***the most important***

7  ***pieces of information on the PDP*** [principal display panel]," along with the statement of identity.

8  58 Fed. Reg. 2302-01, 2306 (emphasis added); *see also* 21 C.F.R. § 101.1 (defining "principal

9  display panel" as "the part of a label that is most likely to be displayed, presented, shown, or

10 examined under customary conditions of display for retail sale").

11     39.   The FDA recognizes that nutrient content claims affect consumers' food choices by

12 inducing them to adopt more restrictive dietary patterns that will help them maintain healthy dietary

13 practices.  *See* 58 Fed. Reg. 2302-01, 2319 ("[T]he agency's [FDA's] approach to developing a

14 system of nutrient content claims emphasizes three objectives: (1) Consistency among definitions,

15 (2) claims that are in keeping with public health goals, and (3) claims that can be used by consumers

16 to maintain healthy dietary practices"); 56 Fed. Reg. 60,478-01, 60,478 (stating in pertinent part that

17 FDA had proposed "requirements for label statements relating to oils, fats, and fatty foods used as a

18 means of reducing the dietary intake of fatty acids").

19     40.   The FDA also recognizes that food manufacturers make nutrient content claims on

20 foods' labels to market their products to consumers and induce consumers to buy them.  That is, the

21 FDA recognizes that for food manufacturers, nutrient content claims are a powerful marketing tool.

22 *See* 79 Fed. Reg. 23,262-01, 23,271 ("Manufacturers are not likely to voluntarily make nutrient

23 content claims if the addition would confuse consumers and negatively impact sales."); 54 Fed. Reg.

24 32,610-01, 32,614 (observing that prior to NLEA, "[b]ecause of the growing public interest in eating

25 healthy foods, manufacturers began to place statements on their labels that described their products

26 in ways such as 'fresh,' 'natural,' 'low in salt,' 'reduced fat,' and 'no cholesterol'").

27     41.   The FDA moreover recognizes the fundamental premise of the provisions of the

28 NLEA governing nutrient content claims: namely, that consumers read nutrient content claims on

18

CLASS ACTION COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF
Case No.:

foods' labels and, in turn, rely on them in making food choices.  *See* 58 Fed. Reg. 2302-01, 2394 (noting in reference to nutrient content claims, "consumers place great reliance on the portions of the food label that they believe to be regulated by the Government"); 56 Fed. Reg. 60,421-01, 60,433 ("FDA surveys have shown that consumers want nutrient content claims and use them in making food selections . . . .").  Underscoring this point, the FDA has cited the U.S. Supreme Court for the proposition that, "*[t]here is an 'immediate connection,' . . . between nutrient content claims on food labels and consumers' food choices*."  58 Fed. Reg. 2302-01, 2394 (citing *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 569 (1980)) (emphasis added).

42.    Since the enactment of the NLEA and the promulgation of the FDA's implementing regulations, Congress has continued to regard nutrient content claims as an important regulatory arena.  In 2005, the U.S. Senate Committee on Appropriations directed the FDA to continue focusing on potentially misleading nutrient content claims:

> Given the important nature of the information provided on the food label and in light of the New Dietary Guidelines for Americans 2005, the Committee is interested in ensuring that food labels can be easily understood and reflect information that is factual.  ***The Committee is concerned that consumers may be faced with misleading information on caloric and nutrient content and health-related claims, and believes it is vital that consumers are able to trust the accuracy of food labels.  Therefore, the Committee directs the FDA to continue to apply resources to efforts that ensure the accuracy of the Nutrition Facts panel and address potentially misleading health and nutrition statements on the food label*** and to report to the Committee by February 1, 2006 on the types of labeling violations discovered and actions taken in response to such violations.

S. Rep. No. 109-92 (June 27, 2005) (emphasis added), *available at* 2005 WL 6407430.

43.    In response to the U.S. Senate Committee on Appropriations' directive, the FDA reported in April 2006 that between October 1, 2004 and December 6, 2005 it conducted field examinations of approximately 28,000 food labels, collected 543 samples for nutrient analysis and/or label review, and issued fifty-six (56) warning letters for misbranding violations, including improper nutrient content claims.  Exhibit I at p. 3, Andrew C. von Eschenbach, U.S. Food & Drug Admin., Report to Congress on Compliance with Food Label Regulations Under the Food and Drug Administration's Purview, S. Rep. No. 109-92 (Apr. 19, 2006).

44.    In 2010, in an open letter to the food industry, former FDA Commissioner Margaret A. Hamburg, MD expressed concern "about the number and variety of label claims that may not help

CLASS ACTION COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF
Case No.:

consumers distinguish healthy food choices from less healthy ones and, indeed, may be false or misleading." Hamburg Letter. To address these concerns, the FDA sent warning letters to many food manufacturers notifying them that "their labels are in violation of the law and subject to legal proceedings to remove misbranded products from the marketplace." *Id.* The FDA's warning letters "cover[ed] a range of concerns about how false or misleading labels can undermine the intention of Congress to provide consumers with labeling information that enables consumers to make informed and healthy food choices," including "***[m]isleading 'healthy' claims continu[ing] to appear on foods that do not meet the long- and well-established definition for use of that term***." *Id.* (emphasis added).

45.    In 2011, the U.S. Government Accountability Office reiterated many of the same points that Congress and the FDA had made earlier concerning nutrient content claims, including that consumers increasingly are looking for healthy foods, consumers rely on federally regulated nutrient content claims in making food choices, and food manufacturers use nutrient content claims to market their products to consumers:

> Consumers increasingly seek information on food labels to help them make healthy food choices, and they rely on federal agencies to ensure that such information is truthful. Food companies may use health- and/or nutrient-related claims on food labels to appeal to consumers, distinguish their products from their competitors', and otherwise increase their sales. However, when those claims are false or misleading, consumers' efforts to select healthy food may be undermined.

U.S. Gov't Accountability Office, GAO-11-102, Food Labeling: FDA Needs to Reassess Its Approach to Protecting Consumers from False or Misleading Claims at 1 (2011), *available at* http://www.gao.gov/assets/320/314473.pdf.

46.    Additionally, the Federal Trade Commission ("FTC"), whose mission includes eliminating unfair or deceptive acts or practices in advertising and marketing, has had a long-standing view that claims involving health in advertising are "presumptively material" to consumers. *See* FTC Policy Statement on Deception, 103 F.T.C. 110, 1984 WL 565319, at *49 (1984). After enactment of the NLEA, the FTC reinforced its position that claims involving health made in relation to food are "presumptively material," and are likely to affect a consumer's choice or use of

CLASS ACTION COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF
Case No.:

1    the food.  *See* FTC Enforcement Policy Statement on Food Advertising, 1994 WL 642482, at *4

2    (F.T.C. May 1994).

3                   **CLIF'S LABELING OF ITS LUNA BARS AND CLIF BARS**
                    **UNIFORMLY VIOLATES THE FDA'S REGULATIONS**
4

5           47.    Clif's LUNA Bars and CLIF Bars are uniformly mislabeled for at least two reasons.

6    First, each LUNA Bar and CLIF Bar bears a Healthy Nutrient Content Claim because each LUNA

7    Bar's and CLIF Bar's label uses the term "health" or another synonym of "healthy" in connection

8    with a nutrient statement.  Second, each LUNA Bar and CLIF Bar fails to comply with the FDA's

9    requirements for Healthy Nutrient Content Claims because each LUNA Bar and CLIF Bar has more

10   total fat and/or saturated fat than is permitted for a food bearing a Healthy Nutrient Content Claim.

11   Each LUNA Bar and CLIF Bar bears a Healthy Nutrient Content Claim that may be ascertained by

12   reference to statements on each LUNA Bar's and CLIF Bar's labeling.  *See* Exhibit A, LUNA Whole

13   Nutrition Bars' Labels; Exhibit B, LUNA Protein Bars' Labels; Exhibit C, CLIF Kid Organic Zbars'

14   Labels; Exhibit D, CLIF Kid Protein Zbars' Labels; Exhibit E, CLIF MOJO Sweet and Salty Trail

15   Mix Bars' Labels; Exhibit F, CLIF Organic Trail Mix Bars' Labels.  Moreover, each LUNA Bar's

16   and CLIF Bar's violation(s) of California's and the FDA's requirements for Healthy Nutrient

17   Content Claims may be ascertained by comparing the specific requirements to the Nutrition Facts

18   information on the each LUNA Bar's and CLIF Bar's labeling.

19          48.    As reflected in ¶¶ 54–55, *infra*, each LUNA Bar's label states "health," which is a

20   derivative of "healthy."  *See* ¶¶ 18, 28, *supra*.  Additionally, as reflected in ¶¶ 54–55, *infra*, each

21   LUNA Bar's label also states "Whole Nutrition" and/or "nutrition," which are synonyms of

22   "healthy" as used on the LUNA Bars' labels.  *See* ¶¶ 19, 29, *supra*.

23          49.    As reflected in ¶¶ 54–55, *infra*, each LUNA Bar's label bears an express or implied

24   statement that it contains one or more of the following nutrients:

25                 a.     "protein" (*see* 21 U.S.C. § 343(q)(1)(D));

26                 b.     "fiber" (*see* 21 U.S.C. § 343(q)(1)(D));

27                 c.     "calcium" (*see* 21 C.F.R. § 101.9(c)(8)(ii));

28                 d.     "iron" (*see* 21 C.F.R. § 101.9(c)(8)(ii));

21

CLASS ACTION COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF
Case No.:

e.    "folic acid" (*see* 21 C.F.R. § 101.9(c)(8)(iv));

f.    "vitamin D" (*see* 21 C.F.R. § 101.9(c)(8)(iv)); and

g.    "total fat" (*see* 21 U.S.C. § 343(q)(1)(D)).

50.    As reflected in ¶¶ 54–55, *infra*, each LUNA Bar violates the FDA's regulation governing Healthy Nutrient Content Claims for both of the following reasons:

a.    High in fat (*see* 21 C.F.R. § 101.62(b)(2)); and

b.    High in saturated fat (*see* 21 C.F.R. § 101.62(c)(2)).

51.    As reflected in ¶¶ 56–59, *infra*, each CLIF Bar's label states "wholesome," "nutritious," that it is "good for . . . our bodies," and/or that it contains ingredients "to keep kids . . . growing," which are synonyms of "healthy" as used on the CLIF Bars' labels. *See* ¶¶ 19, 29, *supra*.

52.    As reflected in ¶¶ 56–59, *infra*, each CLIF Bar's label bears an express or implied statement that it contains one or more of the following nutrients:

a.    "fiber" (*see* 21 U.S.C. § 343(q)(1)(D));

b.    "protein" (*see* 21 U.S.C. § 343(q)(1)(D));

c.    "total fat" (*see* 21 U.S.C. § 343(q)(1)(D)); and

d.    "sodium" (*see* 21 U.S.C. § 343(q)(1)(D)).

53.    As reflected in ¶¶ 56–59, *infra*, each CLIF Bar violates the FDA's regulation governing Healthy Nutrient Content Claims for one or more of the following reasons:

a.    High in fat (*see* 21 C.F.R. § 101.62(b)(2)); and

b.    High in saturated fat (*see* 21 C.F.R. § 101.62(c)(2)).

54.    Each of Clif's LUNA Whole Nutrition Bars identified in ¶ 1 n.1 bears a Healthy Nutrient Content Claim and fails to comply with the FDA's requirements for Healthy Nutrient Content Claims for the reasons stated in ¶¶ 47–50, *supra*.  To illustrate this uniform mislabeling for each LUNA Whole Nutrition Bar, included in Exhibit A is a list detailing each LUNA Whole Nutrition Bar's: (1) label's healthy statement(s) subject to 21 C.F.R. § 101.65(d) ("Healthy Statements"); (2) label's express or implied nutrient content statements ("Nutrient Content Statements"); and (3) violations of the FDA's requirements for Healthy Nutrient Content Claims, i.e., 21 C.F.R. § 101.65(d).  As an example of Clif's unlawful and misleading Healthy Nutrient

Content Claims on its LUNA Whole Nutrition Bars' labels, a scan of the LUNA Whole Nutrition Blueberry Bliss Bar's label is provided below, in addition to being included with the other LUNA Whole Nutrition Bars' labels in Exhibit A.  By way of example, the Healthy Statements and Nutrient Content Statements for the LUNA Whole Nutrition Blueberry Bliss Bar giving rise to the Healthy Nutrient Content Claim are enlarged to make them easier to read in this Complaint.  The other LUNA Whole Nutrition Bars identified in ¶ 1 n.1, *supra*, and included in Exhibit A also bear Healthy Nutrient Content Claims because their labels included the same Healthy Statements as Clif's LUNA Whole Nutrition Blueberry Bliss Bar and materially similar Nutrient Content Statements.

CLASS ACTION COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF
Case No.:



a.    **LUNA Whole Nutrition Blueberry Bliss Bar**

i.    Healthy Statements (emphasis added)

1.    "***Whole Nutrition*** Bar for Women"



2.    "With the CORE 4 vitamins and minerals essential to women's **_health_** – calcium, iron, folic acid, and vitamin D – plus 8 grams of protein and 3 grams of fiber, LUNA does it all, beautifully."

70% organic snack that multitasks! With the **CORE 4**\* vitamins and minerals essential to women's health – **calcium, iron, folic acid, and vitamin D** – plus 8 grams of protein and 3 grams of fiber,† LUNA does it all, beautifully. Feel the power of positive snacking.    — *The Women of LUNA*

3.    "[T]he CORE 4 nutrients are listed because of their importance to many women seeking to maintain their **_health_**."

\**While other nutrients are also essential for human nutrition, the CORE 4 nutrients are listed because of their importance to many women seeking to maintain their health.*

ii.    Nutrient Content Statements

1.    "8g Protein"

2.    "3g Fiber"



3.    "Calcium · Iron · Folic Acid · Vitamin D"

CLASS ACTION COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF
Case No.:

4.    "5g total fat"



iii.    Violations of FDA Regulations

1.    Exceeds the maximum 3 grams of fat per 40 grams of total weight requirement outlined at ¶ 22(a) herein because it contains 4.17 grams of fat per 40 grams of total product.  *See* 21 C.F.R. § 101.62(b)(2).

2.    Exceeds the 1 gram of saturated fat per 40 grams total weight requirement outlined at ¶ 22(b) herein because it contains 1.67 grams of saturated fat per 40 grams of total product.  *See* 21 C.F.R. § 101.62(c)(2).

55.    Each of Clif's LUNA Protein Bars identified in ¶ 1 n.1 bears a Healthy Nutrient Content Claim and fails to comply with the FDA's requirements for Healthy Nutrient Content Claims for the reasons stated in ¶¶ 47–50, *supra*.  To illustrate this uniform mislabeling for each LUNA Protein Bar, included in Exhibit B is a list detailing each LUNA Protein Bar's: (1) label's healthy statement(s) subject to 21 C.F.R. § 101.65(d) ("Healthy Statements"); (2) label's express or implied nutrient content statements ("Nutrient Content Statements"); and (3) violations of the FDA's requirements for Healthy Nutrient Content Claims, i.e., 21 C.F.R. § 101.65(d).  As an example of Clif's unlawful and misleading Healthy Nutrient Content Claims on its LUNA Protein Bars' labels, a scan of the LUNA Chocolate Chip Cookie Dough Protein Bar's label is provided below, in addition to being included with the other LUNA Protein Bars' labels in Exhibit B.  By way of example, the Healthy Statements and Nutrient Content Statements for the LUNA Chocolate Chip Cookie Dough Protein Bar giving rise to the Healthy Nutrient Content Claim are enlarged to make them easier to

26

read in this Complaint.  The other LUNA Protein Bars identified in ¶ 1 n.1, *supra*, and included in Exhibit B also bear Healthy Nutrient Content Claims because their labels included the same Healthy Statements and the same Nutrient Content Statements as Clif's LUNA Chocolate Chip Cookie Dough Protein Bar.



    a.    **LUNA Chocolate Chip Cookie Dough Protein Bar**

        i.    Healthy Statements (emphasis added)

            1.    "With decadent nougat, 12 grams of protein, and vitamins and minerals essential to women's **_health_**, LUNA Protein helps us keep pace with the day."

CLASS ACTION COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF
Case No.:

2.  "Gluten free and boosted by calcium, iron, folic acid, and vitamin D, it's a delicious snack that has the ***nutrition*** we need to stay strong."



ii.  Nutrient Content Statements

1.  "12g Protein"



2.  "Calcium · Iron · Folic Acid · Vitamin D"

3.  "High Protein Bar"



4.  "vitamins and minerals"

5.  "boosted by calcium, iron, folic acid, and vitamin D"

CLASS ACTION COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF
Case No.:

finish line. With decadent nougat, 12 grams of protein, and vitamins and minerals essential to women's health, LUNA® Protein helps us keep pace with the day. Gluten free and boosted by **calcium, iron, folic acid, and vitamin D**, it's a delicious snack that has the nutrition we need to stay strong.  — *The Women of LUNA*

    iii.  Violations of FDA Regulations

       1.  Exceeds the maximum 3 grams of fat per 40 grams of total weight requirement outlined at ¶ 22(a) herein because it contains 5.33 grams of fat per 40 grams of total product.  *See* 21 C.F.R. § 101.62(b)(2).

       2.  Exceeds the 1 gram of saturated fat per 40 grams total weight requirement outlined at ¶ 22(b) herein because it contains 3.11 grams of saturated fat per 40 grams of total product.  *See* 21 C.F.R. § 101.62(c)(2).

56.  Each of Clif's CLIF Kid Organic Zbars identified in ¶ 1 n.2 bears a Healthy Nutrient Content Claim and fails to comply with the FDA's requirements for Healthy Nutrient Content Claims for the reasons stated in ¶¶ 47, 51–53, *supra*.  To illustrate this uniform mislabeling for each CLIF Kid Organic Zbar, included in Exhibit C is a list detailing each CLIF Kid Organic Zbar's: (1) label's healthy statement(s) subject to 21 C.F.R. § 101.65(d) ("Healthy Statements"); (2) label's express or implied nutrient content statements ("Nutrient Content Statements"); and (3) violations of the FDA's requirements for Healthy Nutrient Content Claims, i.e., 21 C.F.R. § 101.65(d).  As an example of Clif's unlawful and misleading Healthy Nutrient Content Claims on its CLIF Kid Organic Zbars' labels, scans of the CLIF Kid Organic Chocolate Brownie ZBar's label are provided below, in addition to being included with the other CLIF Kid Organic ZBars' labels in Exhibit C. By way of example, the Healthy Statement and Nutrient Content Statements for the CLIF Kid Organic Chocolate Brownie ZBar giving rise to the Healthy Nutrient Content Claim are enlarged to make them easier to read in this Complaint.  The other CLIF Kid Organic Zbars identified in ¶ 1 n.2, *supra*, and included in Exhibit C also bear Healthy Nutrient Content Claims because their labels included the same Healthy Statement as Clif's CLIF Kid Organic Chocolate Brownie ZBar and materially similar Nutrient Content Statements.

29



a.    **CLIF Kid Organic Chocolate Brownie Zbar**

i.    Healthy Statements (emphasis added)

1.    "In raising our family, finding ***nutritious*** on-the-go snacks for our kids wasn't easy.   That's why we created CLIF Kid— ***wholesome***, delicious snacks made with organic ingredients ***to keep kids*** going, ***growing***, and exploring."

CLASS ACTION COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF
Case No.:

In raising our family, finding nutritious on-the-go snacks for our kids wasn't easy. That's why we created CLIF Kid® – wholesome, delicious snacks made with organic ingredients to keep kids going, growing, and exploring.

      ii.      Nutrient Content Statements

              1.      "3g Fiber"

              2.      "12 Vitamins & Minerals"



              3.      "3.5g total fat"

      iii.      Violations of FDA Regulations

              1.      Exceeds the maximum 3 grams of fat per 40 grams of total weight requirement outlined at ¶ 22(a) herein because it contains 3.89 grams of fat per 40 grams of total product. *See* 21 C.F.R. § 101.62(b)(2).

              2.      Exceeds the 1 gram of saturated fat per 40 grams total weight requirement outlined at ¶ 22(b) herein because it contains 1.67

CLASS ACTION COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF
Case No.:

1          grams of saturated fat per 40 grams of total product.  *See* 21

2          C.F.R. § 101.62(c)(2).

3          57.    Each of Clif's CLIF Kid Protein Zbars identified in ¶ 1 n.2 bears a Healthy Nutrient

4   Content Claim and fails to comply with the FDA's requirements for Healthy Nutrient Content

5   Claims for the reasons stated in ¶¶ 47, 51–53, *supra*.  To illustrate this uniform mislabeling for each

6   CLIF Kid Protein Zbar, included in Exhibit D is a list detailing each CLIF Kid Protein Zbar's:

7   (1) label's healthy statement(s) subject to 21 C.F.R. § 101.65(d) ("Healthy Statements"); (2) label's

8   express or implied nutrient content statements ("Nutrient Content Statements"); and (3) violations of

9   the FDA's requirements for Healthy Nutrient Content Claims, i.e., 21 C.F.R. § 101.65(d).  As an

10  example of Clif's unlawful and misleading Healthy Nutrient Content Claims on its CLIF Kid Protein

11  Zbars' labels, a scan of the CLIF Kid Chocolate Chip Protein ZBar's label is provided below, in

12  addition to being included with the other CLIF Kid Protein ZBars' labels in Exhibit D.  By way of

13  example, the Healthy Statement and Nutrient Content Statements for the CLIF Kid Chocolate Chip

14  Protein ZBar giving rise to the Healthy Nutrient Content Claim are enlarged to make them easier to

15  read in this Complaint.  The other CLIF Kid Protein Zbars identified in ¶ 1 n.2, *supra*, and included

16  in Exhibit D also bear Healthy Nutrient Content Claims because their labels included the same

17  Healthy Statement as Clif's CLIF Kid Chocolate Chip Protein ZBar and materially similar Nutrient

18  Content Statements.

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF
Case No.:



a. **CLIF Kid Chocolate Chip Protein ZBar**

   i. Healthy Statements (emphasis added)

      1. "In raising our family, finding _**nutritious**_ on-the-go snacks for our kids wasn't easy. That's why we created CLIF Kid— _**wholesome**_, delicious snacks made with organic whole grains _**to keep kids**_ going, _**growing**_, and exploring."

   ii. Nutrient Content Statements

      1. "5g Protein"

      2. "3g Fiber"

CLASS ACTION COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF
Case No.:



iii.    Violations of FDA Regulations

1.    Exceeds the 1 gram of saturated fat per 40 grams total weight requirement outlined at ¶ 22(b) herein because it contains 1.11 grams of saturated fat per 40 grams of total product.  *See* 21 C.F.R. § 101.62(c)(2).

58.    Each of Clif's CLIF MOJO Sweet and Salty Trail Mix Bars identified in ¶ 1 n.2 bears a Healthy Nutrient Content Claim and fails to comply with the FDA's requirements for Healthy Nutrient Content Claims for the reasons stated in ¶¶ 47, 51–53, *supra*.  To illustrate this uniform mislabeling for each CLIF MOJO Sweet and Salty Trail Mix Bar, included in Exhibit E is a list detailing each CLIF MOJO Sweet and Salty Trail Mix Bar's: (1) label's healthy statement(s) subject to 21 C.F.R. § 101.65(d) ("Healthy Statements"); (2) label's express or implied nutrient content statements ("Nutrient Content Statements"); and (3) violations of the FDA's requirements for Healthy Nutrient Content Claims, i.e., 21 C.F.R. § 101.65(d).  As an example of Clif's unlawful and misleading Healthy Nutrient Content Claims on its CLIF MOJO Sweet and Salty Trail Mix Bars' labels, a scan of the CLIF MOJO Sweet and Salty Dark Chocolate Almond Coconut Trail Mix Bar's label is provided below, in addition to being included with the other CLIF MOJO Sweet and Salty Trail Mix Bars' labels in Exhibit E.  By way of example, the Healthy Statement and Nutrient Content Statements for the CLIF MOJO Sweet and Salty Dark Chocolate Almond Coconut Trail Mix Bar giving rise to the Healthy Nutrient Content Claim are enlarged to make them easier to read in this Complaint.  The other CLIF MOJO Sweet and Salty Trail Mix Bars identified in ¶ 1 n.2, *supra*, and included in Exhibit E also bear Healthy Nutrient Content Claims because their labels

CLASS ACTION COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF
Case No.:

included the same Healthy Statement as Clif's CLIF MOJO Sweet and Salty Dark Chocolate Almond Coconut Trail Mix Bar and materially similar Nutrient Content Statements.



a. **CLIF MOJO Sweet and Salty Dark Chocolate Almond Coconut Trail Mix Bar**

   i. Healthy Statements (emphasis added)

      1. "Ready to go whenever and wherever you are, CLIF MOJO combines simple and organic ingredients that are ***good for*** both ***our bodies*** and the planet."

35

ff the day has to offer. Ready to go whenever and wherever you are, CLIF MOJO combines
simple and organic ingredients that are good for both our bodies and the planet.

    ii.        Nutrient Content Statements

              1.      "8g Protein"

              2.      "3g Fiber"



              3.      "12g total fat"

    iii.      Violations of FDA Regulations

              1.      Exceeds the maximum 3 grams of fat per 40 grams of total weight requirement outlined at ¶ 22(a) herein because it contains 10.67 grams of fat per 40 grams of total product. *See* 21 C.F.R. § 101.62(b)(2).

              2.      Exceeds the 1 gram of saturated fat per 40 grams total weight requirement outlined at ¶ 22(b) herein because it contains 5.33 grams of saturated fat per 40 grams of total product. *See* 21 C.F.R. § 101.62(c)(2).

59.     Each of Clif's CLIF Organic Trail Mix Bars identified in ¶ 1 n.2 bears a Healthy Nutrient Content Claim and fails to comply with the FDA's requirements for Healthy Nutrient Content Claims for the reasons stated in ¶¶ 47, 51–53, *supra*. To illustrate this uniform mislabeling for each CLIF Organic Trail Mix Bar, included in Exhibit F is a list detailing each CLIF Organic Trail Mix Bar's: (1) label's healthy statement(s) subject to 21 C.F.R. § 101.65(d) ("Healthy Statements"); (2) label's express or implied nutrient content statements ("Nutrient Content Statements"); and (3) violations of the FDA's requirements for Healthy Nutrient Content Claims, i.e., 21 C.F.R. § 101.65(d). As an example of Clif's unlawful and misleading Healthy Nutrient Content Claims on its CLIF Organic Trail Mix Bars' labels, a scan of the CLIF Dark Chocolate Almond Sea Salt Organic Trail Mix Bar's label is provided below, in addition to being included with

CLASS ACTION COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF
Case No.:

1   the other CLIF Organic Trail Mix Bars' labels in Exhibit F.  By way of example, the Healthy

2   Statement and Nutrient Content Statements for the CLIF Dark Chocolate Almond Sea Salt Organic

3   Trail Mix Bar giving rise to the Healthy Nutrient Content Claim are enlarged to make them easier to

4   read in this Complaint.  The other CLIF Organic Trail Mix Bars identified in ¶ 1 n.2, *supra*, and

5   included in Exhibit F also bear Healthy Nutrient Content Claims because their labels included the

6   same Healthy Statement as Clif's CLIF Dark Chocolate Almond Sea Salt Organic Trail Mix Bar and

7   materially similar Nutrient Content Statements.



24          a.      **CLIF Dark Chocolate Almond Sea Salt Organic Trail Mix Bar**

25                  i.      Healthy Statements (emphasis added)

26                          1.      "Combining simple and organic ingredients that are ***good for***

27                                  both ***our bodies*** and the planet, our trail mix bar comes in

CLASS ACTION COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF
Case No.:

flavors for just about every occasion—no matter where the trail takes you."

up and discovering all the good stuff the day has to offer. Combining simple and organic ingredients that are good for both our bodies and the planet, our trail mix bar comes in flavors for just about every occasion—no matter where the trail takes you.

ii.     Nutrient Content Statements

1.     "3g Fiber"

**3g Fiber**

iii.    Violations of FDA Regulations

1.     Exceeds the maximum 3 grams of fat per 40 grams of total weight requirement outlined at ¶ 22(a) herein because it contains 13 grams of fat per 40 grams of total product.  *See* 21 C.F.R. § 101.62(b)(2).

2.     Exceeds the 1 gram of saturated fat per 40 grams total weight requirement outlined at ¶ 22(b) herein because it contains 3 grams of saturated fat per 40 grams of total product.  *See* 21 C.F.R. § 101.62(c)(2).

60.     Clif's labels portray the false and misleading impression that the LUNA Bars and CLIF Bars have a nutrient profile consistent with dietary recommendations.  Further, Clif's abuse of Healthy Nutrient Content Claims parallels conduct giving rise to enforcement action by the FDA against other packaged food manufacturers.  Since 2007, the FDA has sent warning letters to at least twenty (20) packaged food manufacturers     including nine in 2015 alone     stating that each manufacturer's products were misbranded under 21 U.S.C. § 403(r)(1)(A) for bearing Healthy Nutrient Content Claims but failing to meet the FDA's requirements for use of such claims.[12]  The

---

[12] *See* FDA, Warning Letter to Everything Spelt Company, Inc., Mar. 30, 2007, http://www.fda.gov/ ICECI/EnforcementActions/WarningLetters/2006/ucm076345.htm; FDA, Warning Letter to Ken's Foods, Inc., Feb. 22, 2010, http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/ ucm202830.htm; FDA, Warning Letter to Nestle Nutrition, Feb. 22, 2010, http://www.fda.gov/ ICECI/EnforcementActions/WarningLetters/2010/ucm202821.htm; FDA, Warning Letter to CytoSport, Inc., June 29, 2011, http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/ ucm261684.htm; FDA, Warning Letter to CAW Industries, Inc., Jan. 31, 2012, http://www.fda.gov/

38

CLASS ACTION COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF
Case No.:

FDA identified as Healthy Nutrient Content Claims statements in parallel with those that Clif makes on its products such as, "deliciously sweet and healthy diced plums . . .,"[13] "A Healthy Butter!",[14] "HEALTHY EVERYDAY SNACK!",[15] and, "healthy and tasty."[16]

61.    Moreover, Clif's LUNA Bars and CLIF Bars are mislabeled with improper Healthy Nutrient Content Claims in nearly identical fashion to four similar snack bars manufactured by Kind, LLC ("Kind"), which the FDA identified in a warning letter to Kind dated March 17, 2015, attached hereto as Exhibit J.  The FDA identified as Healthy Nutrient Content Claims on Kind's products and its website the statements, "Healthy and tasty, convenient and wholesome," "There's healthy.

---

ICECI/EnforcementActions/WarningLetters/2012/ucm290046.htm; FDA, Warning Letter to Hail Merry, LLC, Oct. 23, 2012, http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2012/ ucm326550.htm; FDA, Warning Letter to North Dallas Big Honey Company, June 24, 2013, http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2013/ucm358641.htm; FDA, Warning Letter to Waterwheel Premium Foods Pty Limited, July 26, 2013, http://www.fda.gov/ ICECI/EnforcementActions/WarningLetters/2013/ucm364729.htm; FDA, Warning Letter to Premier Organics Inc., Aug. 12, 2014, http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2014/ ucm417246.htm; FDA, Warning Letter to Sunsweet Growers Inc., Oct. 2, 2014, http://www.fda.gov/ ICECI/EnforcementActions/WarningLetters/ucm428002.htm; FDA, Warning Letter to Minerva Dairy, Inc., Oct. 9, 2014, http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2014/ ucm418768.htm; FDA, Warning Letter to Carrington Farms, Jan. 13, 2015, http://www.fda.gov/ ICECI/EnforcementActions/WarningLetters/ucm433444.htm; FDA, Warning Letter to Bragg Live Food Products, Inc., Mar. 4, 2015, http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/ ucm437839.htm; FDA, Warning Letter to Kind, LLC, Mar. 17, 2015, http://www.fda.gov/ICECI/ EnforcementActions/WarningLetters/ucm440942.htm; FDA, Warning Letter to Yummy Earth Inc., Apr.    2,    2015,    http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2015/ ucm442130.htm; FDA, Warning Letter to Laughing Giraffe Organics, May 12, 2015, http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2015/ucm453687.htm;    FDA, Warning Letter to Wonder Natural Foods Corp., July 13, 2015, http://www.fda.gov/ICECI/ EnforcementActions/WarningLetters/2015/ucm460910.htm; FDA, Warning Letter to Quest Nutrition, LLC, July 29, 2015, http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/ 2015/ucm460915.htm; FDA, Warning Letter to Red Mill Farms LLC, Sept. 17, 2015, http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2015/ucm463598.htm;    FDA, Warning Letter to Ribon Company, Ltd., Oct. 5, 2015, http://www.fda.gov/ICECI/ EnforcementActions/WarningLetters/2015/ucm465792.htm.

[13] FDA, Warning Letter to Sunsweet Growers Inc., Oct. 2, 2014, http://www.fda.gov/ICECI/ EnforcementActions/WarningLetters/ucm428002.htm.

[14] FDA, Warning Letter to Minerva Dairy, Inc., Oct. 9, 2014, http://www.fda.gov/ICECI/ EnforcementActions/WarningLetters/2014/ucm418768.htm.

[15] FDA, Warning Letter to Laughing Giraffe Organics, May 12, 2015, http://www.fda.gov/ICECI/ EnforcementActions/WarningLetters/2015/ucm453687.htm.

[16] FDA, Warning Letter to Ribon Company, Ltd., Oct. 5, 2015, http://www.fda.gov/ICECI/ EnforcementActions/WarningLetters/2015/ucm465792.htm.

CLASS ACTION COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF
Case No.:

There's tasty.  Then there's healthy and tasty," "all of our snacks are pretty much the nirvana of healthful tastiness," and, "KIND Peanut Butter Dark Chocolate + Protein is a healthy and satisfying blend of peanuts and antioxidant-rich dark chocolate."  *Id.* at p. 2  The FDA stated that Kind's products did not meet the requirements for use of Healthy Nutrient Content Claims because they exceeded the maximum saturated fat requirements for use of such claims, i.e., each Kind snack bar contained more than 1 gram of saturated fat per 40 grams of total weight.  *Id.* at pp. 2–3; *see also* ¶ 22(b) (describing maximum saturated fat requirement).  Just as with Kind, Clif's LUNA Bars and CLIF Bars similarly do not meet the requirements for use of Healthy Nutrient Content Claims because they exceed the maximum saturated fat requirements (in addition to the maximum total fat requirements) to allow Clif to make use of such claims.

62.     According to FDA policy and practice, it issues warning letters such as those identified in ¶¶ 60–61 "only for violations of regulatory significance."  FDA, Regulatory Procedures Manual at 4-2 (July 2012), *available at* http://www.fda.gov/downloads/ICECI/ComplianceManuals/ RegulatoryProceduresManual/UCM074330.pdf.   Warning letters "communicate[] the agency's position on a matter" and are intended "to correct violations of the statutes or regulations."  *Id.*; *see also* Hamburg Letter (stating that warning letters "convey our [FDA's] regulatory intentions").  In its regulatory capacity over food labeling, the FDA issues warning letters to clarify food-labeling requirements and provide labeling instruction to food manufacturers.  *See* Hamburg Letter ("I will close with the hope that these warning letters will give food manufacturers further clarification about what is expected of them as they review their current labeling.").

63.     Independent of the FDA's requirements for Healthy Nutrient Content Claims, each LUNA Bar's and CLIF Bar's labeling violates the FDCA and California law because its label is false and misleading under the general standard.  As alleged throughout this Complaint, Clif utilizes "health" and/or synonyms of "healthy" in conjunction with claims that the LUNA Bars and CLIF Bars contain nutrients that consumers understand as beneficial and healthful such as protein, fiber, calcium, iron, folic acid, and vitamin D.  The FDA's factual findings outlined above confirm that consumers reasonably expect foods representing themselves as being "healthy" or supporting "health" because they contain these perceived beneficial nutrients are actually healthy and do not

CLASS ACTION COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF
Case No.:

1    contain unhealthy levels of fat and saturated fat.  Thus, each LUNA Bar's and CLIF Bar's label is

2    false and misleading under the general standard because each LUNA Bar and CLIF Bar

3    misrepresents to consumers that it is healthy when, in fact, each product contains large quantities of

4    unhealthy substances.  *See* 21 U.S.C. § 343(a)(1).

5                                **CLIF REFUSED TO CEASE ITS WRONGDOING**

6             64.    On October 20, 2015, Plaintiff Perieff and his counsel notified Clif of the allegations

7    in this Complaint concerning its CLIF Bars and LUNA Bars via letter pursuant to the CLRA, Cal.

8    Civ. Code §§ 1750–85.  A copy of Plaintiff Perieff's CLRA letter to Clif (labels omitted) is attached

9    hereto as Exhibit K.  Clif's agents signed the U.S. mail return receipt form confirming that Clif

10   received Plaintiff Perieff's CLRA letter by October 26, 2015.  *Id.* at pp. 15–16.

11            65.    Plaintiff Perieff's CLRA letter put Clif on notice of the allegations in this Complaint

12   concerning its CLIF Bars and LUNA Bars and demanded, *inter alia*, that Clif cease selling in

13   California the CLIF Bars and LUNA Bars bearing the unlawful, false, and misleading labels

14   described herein.  *Id.* at pp. 1–14.

15            66.    Clif responded to Plaintiff Perieff's CLRA letter by letter dated November 20, 2015.

16   A copy of Clif's response to Plaintiff Perieff's CLRA letter is attached here as Exhibit L.  In its

17   response, Clif denied that its CLIF Bars and LUNA Bars were mislabeled, indicated that it would not

18   change its CLIF Bars' or LUNA Bars' labels, and advised Plaintiff Perieff and his counsel to "not

19   throw good money after bad."  *Id.* at p. 4.

20            67.    On December 21, 2015, Plaintiff Cheslow and her counsel provided Clif with greater

21   detail about the allegations in this Complaint concerning its LUNA Bars via letter pursuant to the

22   CLRA, Cal. Civ. Code §§ 1750–85.  A copy of Plaintiff Cheslow's CLRA letter to Clif (labels

23   omitted) is attached hereto as Exhibit M.  Clif's agents signed the U.S. mail return receipt forms

24   confirming that Clif received Plaintiff Cheslow's CLRA letter by December 28, 2015.  *Id.* at pp. 24–

25   25.

26            68.    Plaintiff Cheslow's CLRA letter put Clif on notice of the same allegations in this

27   Complaint concerning its LUNA Bars as were previously made in Plaintiff Perieff's CLRA letter,

28

CLASS ACTION COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF
Case No.:

1   and demanded, *inter alia*, that Clif cease selling in California the LUNA Bars bearing the unlawful,

2   false, and misleading labels described herein. *Id.* at pp. 1–23.

3          69.    Clif never responded to Plaintiff Cheslow's CLRA letter, presumably standing by its

4   prior response to Plaintiff Perieff's CLRA letter indicating that it would not change its LUNA Bars'

5   labels.

6          70.    Although Clif now has had ample notice of Plaintiffs' allegations that its LUNA

7   Bars' and CLIF Bars' labeling is unlawful, false, and misleading as described herein and had an

8   opportunity to address Plaintiffs' demands, Clif has failed to do so.

9                              **CLASS ACTION ALLEGATIONS**

10         **I.     Class Action Allegations Relating to Purchases of Clif's LUNA Bars**

11         71.    This action asserts claims relating to purchases of Clif's LUNA Bars on behalf of two

12  California Classes pursuant to Cal. Civ. Proc. Code § 382, defined as follows:

13         The LUNA Bars Damages Class

14         All California citizens who purchased Clif's LUNA Bars packaged food products[17] that
    were labeled with derivatives of "healthy" such as "health," and/or synonyms thereof,
15  i.e.,"Whole Nutrition" and/or "nutrition," and a statement about the level of protein, fiber,
    calcium, iron, folic acid, vitamin D, and/or fat that did not meet the nutrient levels required by
16  the FDA when making a Healthy Nutrient Content Claim.

17         The LUNA Bars Declaratory/Injunctive Class

18         All California citizens.

19         72.    Excluded from the LUNA Bars Damages and Declaratory/Injunctive Classes are:

20  (i) Clif Bar & Company, including any entity in which Clif Bar & Company has a controlling

21  interest, is a parent or subsidiary, or which is controlled by Clif Bar & Company, as well as its

22  officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns;

23  (ii) any person who is not a California citizen as of the date of the filing of this action; (iii) all

24  purchases of Clif's LUNA Bars made outside the State of California by any California citizen; and

25  (iv) the judges to whom this action is assigned and any members of their immediate families.

26  ───────────────

27  [17] Plaintiffs identified the Clif LUNA Bars identified in ¶ 1 n.1, *supra*, and reserve the right to
    amend the class definition to include additional LUNA Bars subsequently identified through
28  discovery.

42

CLASS ACTION COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF
Case No.:

73.     Certification of Plaintiff Cheslow's claims for class-wide treatment is appropriate because Plaintiff Cheslow can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

### A.     The Parties Are Numerous and Ascertainable

74.     There are thousands of members of the LUNA Bar Classes who are geographically dispersed throughout California.  Therefore, individual joinder of the LUNA Bar Classes' members in order to bring them all before the Court is impracticable.

### B.     There Is a Well-Defined Community of Interest

75.     In order to determine if there is a well-defined community of interest such that the question is one of a common or general interest, a court should consider: (1) whether common questions of law and facts predominate; (2) whether the class representative's claims or defenses are typical of the class; and (3) whether the class representatives can adequately represent the class.

### i.     Common Questions of Law and Fact Predominate

76.     Common questions of law or fact exist as to all members of the LUNA Bar Damages Class and predominate over any questions affecting only individual members of that Class.  These common legal or factual questions include:

    a.     Whether Clif's LUNA Bars as described herein were sold in California;

    b.     Whether Clif's LUNA Bars' labels make Healthy Nutrient Content Claims;

    c.     Whether Clif's LUNA Bars' labels comply with the FDA's requirements for Healthy Nutrient Content Claims;

    d.     Whether Clif's mislabeling of the LUNA Bars as described herein is unlawful;

    e.     Whether Clif's mislabeling of the LUNA Bars as described herein is material to consumers; and

    f.     The amount of damages or restitution due to Plaintiff Cheslow and members of the LUNA Bars Damages Class.

77.     Common questions of law or fact exist as to all members of the LUNA Bars Declaratory/Injunctive Class and predominate over any questions affecting only individual members of that Class.  These common legal or factual questions include:

43

a.    Whether Clif's LUNA Bars as described herein are currently being offered for sale in California;

b.    Whether Clif's LUNA Bars' labels make Healthy Nutrient Content Claims;

c.    Whether Clif's LUNA Bars' labels comply with the FDA's requirements for Healthy Nutrient Content Claims;

d.    Whether Clif's mislabeling of the LUNA Bars as described herein is unlawful;

e.    Whether Clif's mislabeling of the LUNA Bars as described herein is material to consumers; and

f.    Whether Plaintiff Cheslow and members of the LUNA Bars Declaratory/Injunctive Class are entitled to declaratory and injunctive relief.

### ii.    Plaintiff's Claims Are Typical of the Classes

78.    Plaintiff Cheslow's claims are typical of the claims of the LUNA Bars Damages Class.  Plaintiff Cheslow is a California citizen who purchased Clif LUNA Bars in California as described in ¶ 9, *supra*.  Therefore, Plaintiff Cheslow is no different in any material respect from any other member of the LUNA Bars Damages Class, and the relief sought by Plaintiff Cheslow is common to the relief sought by the LUNA Bars Damages Class.

79.    Plaintiff Cheslow's claims are typical of the claims of the LUNA Bars Declaratory/Injunctive Class.  Plaintiff Cheslow is a California citizen who continues to be exposed to Clif's mislabeling as described in ¶ 9, *supra*.  Therefore, Plaintiff Cheslow is no different in any material respect from any other member of the LUNA Bars Declaratory/Injunctive Class, and the relief sought by Plaintiff Cheslow is common to the relief sought by the LUNA Bars Declaratory/Injunctive Class.

### iii.    The Class Representative Can Adequately Represent the Class

80.    Plaintiff Cheslow is an adequate representative of the LUNA Bars Classes because her interests are neither antagonistic to nor in conflict with the interests of the members of the LUNA Bars Classes that she seeks to represent, and she has retained counsel competent and experienced in conducting complex class-action litigation.  Plaintiff Cheslow and her counsel will adequately protect the interests of the LUNA Bars Classes.

44

CLASS ACTION COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF
Case No.:

**C.    A Class Action Is Superior to All Other Available Methods for the Fair and Efficient Adjudication of Plaintiff's and Class Members' Claims**

81.    A class action is superior to other available means for the fair and efficient adjudication of this dispute.  It would be virtually impossible for members of the LUNA Bars Classes individually to obtain the relief sought in this Complaint.  With respect to the LUNA Bars Damages Class, the damages suffered by each individual member of that Class will likely be relatively small, especially given the relatively small cost of Clif's LUNA Bars at issue and the burden and expense of individual prosecution of the complex litigation necessitated by Clif's misconduct.  With respect to the LUNA Bars Declaratory/Injunctive Class, because this action seeks declaratory and injunctive relief to restrain Clif from selling or making available for sale the mislabeled LUNA Bars throughout California, this action is only appropriate as a class action because it affects all California consumers by the nature of the relief sought.

82.    Even if members of the LUNA Bars Classes could afford individual actions, a multitude of such individual actions still would not be preferable to class-wide litigation.  Individual actions also present the potential for inconsistent or contradictory judgments, which would be dispositive of at least some of the issues and hence interests of the other members not party to the individual actions, would substantially impair or impede their ability to protect their interests, and would establish incompatible standards of conduct for the party opposing the LUNA Bars Classes.

83.    A class action presents far fewer litigation management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

84.    With respect to the LUNA Bars Declaratory/Injunctive Class, the Class also may be certified because Clif acted or refused to act on grounds generally applicable to the Class, thereby making preliminary and final injunctive relief and corresponding declaratory relief appropriate.

85.    Also, in the alternative, the LUNA Bars Classes may be certified with respect to particular issues.

**II.    Class Action Allegations Relating to Purchases of Clif's CLIF Bars**

86.    This action asserts claims relating to purchases of Clif's CLIF Bars on behalf of two California Classes pursuant to Cal. Civ. Proc. Code § 382, defined as follows:

CLASS ACTION COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF
Case No.:

The CLIF Bars Damages Class

All California citizens who purchased Clif's CLIF Bars packaged food products[18] that were labeled synonyms of "healthy," i.e., "wholesome," "nutritious," being "good for . . . our bodies," and/or containing ingredients "to keep kids . . . growing," and a statement about the level of fiber, protein, fat, and/or sodium that did not meet the nutrient levels required by the FDA when making a Healthy Nutrient Content Claim.

The CLIF Bars Declaratory/Injunctive Class

All California citizens.

87.    Excluded from the CLIF Bars Damages and Declaratory/Injunctive Classes are: (i) Clif Bar & Company, including any entity in which Clif Bar & Company has a controlling interest, is a parent or subsidiary, or which is controlled by Clif Bar & Company, as well as its officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns; (ii) any person who is not a California citizen as of the date of the filing of this action; (iii) all purchases of Clif's CLIF Bars made outside the State of California by any California citizen; and (iv) the judges to whom this action is assigned and any members of their immediate families.

88.    Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

**A.    The Parties Are Numerous and Ascertainable**

89.    There are thousands of members of the CLIF Bar Classes who are geographically dispersed throughout California.  Therefore, individual joinder of the CLIF Bar Classes' members in order to bring them all before the Court is impracticable.

**B.    There Is a Well-Defined Community of Interest**

90.    In order to determine if there is a well-defined community of interest such that the question is one of a common or general interest, a court should consider: (1) whether common questions of law and facts predominate; (2) whether the class representative's claims or defenses are typical of the class; and (3) whether the class representatives can adequately represent the class.

[18] Plaintiffs identified the Clif CLIF Bars identified in ¶ 1 n.2, *supra*, and reserve the right to amend the class definition to include additional CLIF Bars subsequently identified through discovery.

CLASS ACTION COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF
Case No.:

### i.     Common Questions of Law and Fact Predominate

91.     Common questions of law or fact exist as to all members of the CLIF Bar Damages Class and predominate over any questions affecting only individual members of that Class.  These common legal or factual questions include:

g.     Whether Clif's CLIF Bars as described herein were sold in California;

h.     Whether Clif's CLIF Bars' labels make Healthy Nutrient Content Claims;

i.     Whether Clif's CLIF Bars' labels comply with the FDA's requirements for Healthy Nutrient Content Claims;

j.     Whether Clif's mislabeling of the CLIF Bars as described herein is unlawful;

k.     Whether Clif's mislabeling of the CLIF Bars as described herein is material to consumers; and

l.     The amount of damages or restitution due to Plaintiffs and members of the CLIF Bars Damages Class.

92.     Common questions of law or fact exist as to all members of the CLIF Bars Declaratory/Injunctive Class and predominate over any questions affecting only individual members of that Class.  These common legal or factual questions include:

g.     Whether Clif's CLIF Bars as described herein are currently being offered for sale in California;

h.     Whether Clif's CLIF Bars' labels make Healthy Nutrient Content Claims;

i.     Whether Clif's CLIF Bars' labels comply with the FDA's requirements for Healthy Nutrient Content Claims;

j.     Whether Clif's mislabeling of the CLIF Bars as described herein is unlawful;

k.     Whether Clif's mislabeling of the CLIF Bars as described herein is material to consumers; and

l.     Whether Plaintiffs and members of the CLIF Bars Declaratory/Injunctive Class are entitled to declaratory and injunctive relief.

CLASS ACTION COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF
Case No.:

1

### ii.    Plaintiffs' Claims Are Typical of the Classes

2    93.    Plaintiffs' claims are typical of the claims of the CLIF Bars Damages Class.  Plaintiff

3    Cheslow is a California citizen who purchased Clif CLIF Bars in California as described in ¶ 9,

4    *supra*.  Plaintiff Perieff is a California citizen who purchased Clif CLIF Bars in California as

5    described in ¶ 8, *supra*.  Therefore, Plaintiffs are no different in any material respect from any other

6    member of the CLIF Bars Damages Class, and the relief sought by Plaintiffs is common to the relief

7    sought by the CLIF Bars Damages Class.

8    94.    Plaintiffs' claims are typical of the claims of the CLIF Bars Declaratory/Injunctive

9    Class.  Plaintiff Cheslow is a California citizen who continues to be exposed to Clif's mislabeling as

10    described in ¶ 9, *supra*.  Plaintiff Perieff is a California citizen who continues to be exposed to Clif's

11    mislabeling as described in ¶ 8, *supra*.  Therefore, Plaintiffs are no different in any material respect

12    from any other member of the CLIF Bars Declaratory/Injunctive Class, and the relief sought by

13    Plaintiffs is common to the relief sought by the CLIF Bars Declaratory/Injunctive Class.

14    ### iii.    The Class Representatives Can Adequately Represent the Class

15    95.    Plaintiffs are adequate representatives of the CLIF Bars Classes because their

16    interests are neither antagonistic to nor in conflict with the interests of the members of the CLIF Bars

17    Classes that they seek to represent, and they have retained counsel competent and experienced in

18    conducting complex class-action litigation.  Plaintiffs and their counsel will adequately protect the

19    interests of the CLIF Bars Classes.

20    ### C.    A Class Action Is Superior to All Other Available Methods for the Fair and Efficient Adjudication of Plaintiffs' and Class Members' Claims

21

22    96.    A class action is superior to other available means for the fair and efficient

23    adjudication of this dispute.  It would be virtually impossible for members of the CLIF Bars Classes

24    individually to obtain the relief sought in this Complaint.  With respect to the CLIF Bars Damages

25    Class, the damages suffered by each individual member of that Class will likely be relatively small,

26    especially given the relatively small cost of Clif's CLIF Bars at issue and the burden and expense of

27    individual prosecution of the complex litigation necessitated by Clif's misconduct.  With respect to

28    the CLIF Bars Declaratory/Injunctive Class, because this action seeks declaratory and injunctive

CLASS ACTION COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF
Case No.:

relief to restrain Clif from selling or making available for sale the mislabeled CLIF Bars throughout California, this action is only appropriate as a class action because it affects all California consumers by the nature of the relief sought.

97.    Even if members of the CLIF Bars Classes could afford individual actions, a multitude of such individual actions still would not be preferable to class-wide litigation.  Individual actions also present the potential for inconsistent or contradictory judgments, which would be dispositive of at least some of the issues and hence interests of the other members not party to the individual actions, would substantially impair or impede their ability to protect their interests, and would establish incompatible standards of conduct for the party opposing the CLIF Bars Classes.

98.    A class action presents far fewer litigation management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

99.    With respect to the CLIF Bars Declaratory/Injunctive Class, the Class also may be certified because Clif acted or refused to act on grounds generally applicable to the Class, thereby making preliminary and final injunctive relief and corresponding declaratory relief appropriate.

100.    Also, in the alternative, the CLIF Bars Classes may be certified with respect to particular issues.

**FIRST CAUSE OF ACTION**
**("Unlawful" Business Practices in Violation of the Unfair Competition Law ("UCL"),**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.*)**

**A.    First Cause of Action Relating to Purchases of Clif's LUNA Bars**

101.    Plaintiff Cheslow hereby incorporates all other paragraphs of this Complaint and restates them as if fully set forth herein.

102.    Plaintiff Cheslow brings this claim on behalf of herself, the LUNA Bars Damages Class, and the LUNA Bars Declaratory/Injunctive Class.

103.    The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising.  Cal. Bus. Prof. Code § 17200.

CLASS ACTION COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF
Case No.:

104.    A business act or practice is "unlawful" if it violates any established state or federal law.

105.    As described throughout this Complaint, Clif's LUNA Bars' labeling violates California's Sherman Law, the FDCA, and FDA regulations, including amongst other laws, those identified in ¶¶ 6, 14-22, *supra*. Moreoever, the labeling of Clif's LUNA Bars is false and misleading in violation of Sherman Law § 110660, and FDCA § 343(a).

106.    Clif continues to violate the UCL through its ongoing violation of California and federal law as described herein.

107.    As described herein, Clif obtained money from Plaintiff Cheslow through its unlawful acts and practices because Plaintiff Cheslow purchased the LUNA Bars relying on the accuracy of Clif's labeling and Clif's mislabeling was material to Plaintiff Cheslow's decision to purchase the LUNA Bars.  As a result of Clif's alleged conduct, Plaintiff Cheslow has lost money.

108.    Clif has obtained and continues to obtain money from members of the LUNA Bars Damages Class through its unlawful acts and practices alleged in this Complaint.  As such, Plaintiff Cheslow requests that this Court cause Clif to restore this money to Plaintiff Cheslow and the LUNA Bars Damages Class members and to disgorge the profits that Clif made on these transactions. Otherwise, Plaintiff Cheslow and the LUNA Bars Damages Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

109.    Plaintiff Cheslow also requests that the Court declare Clif's LUNA Bars' labeling unlawful and enjoin Clif from continuing to violate the UCL by selling, offering for sale, or distributing the mislabeled LUNA Bars in California, or causing the mislabeled LUNA Bars to be distributed, sold, or offered for sale in California.  Unless Clif is permanently enjoined from continuing to engage in such violations of the UCL, future consumers of Clif's LUNA Bars will be harmed by Clif's acts and practices in the same way as Plaintiff Cheslow.

**B.    First Cause of Action Relating to Purchases of Clif's CLIF Bars**

110.    Plaintiffs hereby incorporate all other paragraphs of this Complaint and restate them as if fully set forth herein.

CLASS ACTION COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF
Case No.:

111.     Plaintiffs bring this claim on behalf of themselves, the CLIF Bars Damages Class, and the CLIF Bars Declaratory/Injunctive Class.

112.     The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising.  Cal. Bus. Prof. Code § 17200.

113.     A business act or practice is "unlawful" if it violates any established state or federal law.

114.     As described throughout this Complaint, Clif's CLIF Bars' labeling violates California's Sherman Law, the FDCA, and FDA regulations, including amongst other laws, those identified in ¶¶ 6, 14-22, *supra*. Moreoever, the labeling of Clif's CLIF Bars is false and misleading in violation of Sherman Law § 110660, and FDCA § 343(a).

115.     Clif continues to violate the UCL through its ongoing violation of California and federal law as described herein.

116.     As described herein, Clif obtained money from Plaintiffs through its unlawful acts and practices because Plaintiffs purchased the CLIF Bars relying on the accuracy of Clif's labeling and Clif's mislabeling was material to Plaintiffs' decisions to purchase the CLIF Bars.  As a result of Clif's alleged conduct, Plaintiffs have lost money.

117.     Clif has obtained and continues to obtain money from members of the CLIF Bars Damages Class through its unlawful acts and practices alleged in this Complaint.  As such, Plaintiffs request that this Court cause Clif to restore this money to Plaintiffs and the CLIF Bars Damages Class members and to disgorge the profits that Clif made on these transactions.  Otherwise, Plaintiffs and the CLIF Bars Damages Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

118.     Plaintiffs also request that the Court declare Clif's CLIF Bars' labeling unlawful and enjoin Clif from continuing to violate the UCL by selling, offering for sale, or distributing the mislabeled CLIF Bars in California, or causing the mislabeled CLIF Bars to be distributed, sold, or offered for sale in California.  Unless Clif is permanently enjoined from continuing to engage in

CLASS ACTION COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF
Case No.:

1  such violations of the UCL, future consumers of Clif's CLIF Bars will be harmed by Clif's acts and

2  practices in the same way as Plaintiffs.

3

4  **SECOND CAUSE OF ACTION**
**("Unfair" Business Practices in Violation of the Unfair Competition Law ("UCL"),**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.*)**

5

6  **A.    Second Cause of Action Relating to Purchases of Clif's LUNA Bars**

7         119.    Plaintiff Cheslow hereby incorporates all other paragraphs of this Complaint and

8  restates them as if fully set forth herein.

9         120.    Plaintiff Cheslow brings this claim on behalf of herself, the LUNA Bars Damages

10  Class, and the LUNA Bars Declaratory/Injunctive Class.

11         121.    The UCL defines unfair business competition to include any "unlawful, unfair or

12  fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising.  Cal.

13  Bus. Prof. Code § 17200.

14         122.    A business act or practice is "unfair" under the UCL if the reasons, justifications, and

15  motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims.

16         123.    As described throughout this Complaint, Clif's LUNA Bars' labeling violates FDA

17  regulations, the FDCA, the Sherman Law, and is false and misleading.  Clif's practices constitute

18  unfair business practices in violation of the UCL because, among other things, they are immoral,

19  unethical, oppressive, unscrupulous, or substantially injurious to consumers and/or any utility of

20  such practices is outweighed by the harm caused to consumers.  Clif's practices violate the

21  legislative policies of the underlying statutes alleged herein: namely, protecting consumers and

22  preventing persons from being injured by false and misleading advertising.  Clif's practices caused

23  substantial injury to Plaintiff Cheslow and LUNA Bars Class members and are not outweighed by

24  any benefits, and Plaintiff Cheslow and LUNA Bars Class members could not have reasonably

25  avoided their injuries.

26         124.    Clif continues to violate the UCL through its unfair acts and practices as described

27  herein.

28

CLASS ACTION COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF
Case No.:

125.   As described herein, Clif obtained money from Plaintiff Cheslow through its unfair acts and practices because Plaintiff Cheslow purchased Clif's LUNA Bars relying on the accuracy of Clif's labeling and Clif's labeling was material to Plaintiff Cheslow's decision to purchase the LUNA Bars.  As a result of Clif's alleged conduct, Plaintiff Cheslow has lost money.

126.   Clif has obtained and continues to obtain money from members of the LUNA Bars Damages Class through its unlawful acts and practices alleged in this Complaint.  As such, Plaintiff Cheslow requests that this Court cause Clif to restore this money to Plaintiff Cheslow and the LUNA Bars Damages Class members and to disgorge the profits Clif made on these transactions. Otherwise, Plaintiff Cheslow and the LUNA Bars Damages Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

127.   Plaintiff Cheslow also requests that the Court declare Clif's LUNA Bars' labeling unlawful and enjoin Clif from continuing to violate the UCL by selling, offering for sale, or distributing the mislabeled LUNA Bars in California, or causing the mislabeled LUNA Bars to be distributed, sold, or offered for sale in California.  Unless Clif is permanently enjoined from continuing to engage in such violations of the UCL, future consumers of Clif's LUNA Bars will be harmed by Clif's acts and practices in the same way as Plaintiff Cheslow.

**B.**   **Second Cause of Action Relating to Purchases of Clif's CLIF Bars**

128.   Plaintiffs hereby incorporate all other paragraphs of this Complaint and restate them as if fully set forth herein.

129.   Plaintiffs bring this claim on behalf of themselves, the CLIF Bars Damages Class, and the CLIF Bars Declaratory/Injunctive Class.

130.   The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising.  Cal. Bus. Prof. Code § 17200.

131.   A business act or practice is "unfair" under the UCL if the reasons, justifications, and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims.

132.   As described throughout this Complaint, Clif's CLIF Bars' labeling violates FDA regulations, the FDCA, the Sherman Law, and is false and misleading.  Clif's practices constitute

CLASS ACTION COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF
Case No.:

1  unfair business practices in violation of the UCL because, among other things, they are immoral,

2  unethical, oppressive, unscrupulous, or substantially injurious to consumers and/or any utility of

3  such practices is outweighed by the harm caused to consumers.   Clif's practices violate the

4  legislative policies of the underlying statutes alleged herein: namely, protecting consumers and

5  preventing persons from being injured by false and misleading advertising.   Clif's practices caused

6  substantial injury to Plaintiffs and CLIF Bars Class members and are not outweighed by any

7  benefits, and Plaintiffs and CLIF Bars Class members could not have reasonably avoided their

8  injuries.

9      133.   Clif continues to violate the UCL through its unfair acts and practices as described

10  herein.

11      134.   As described herein, Clif obtained money from Plaintiffs through its unfair acts and

12  practices because Plaintiffs purchased Clif's CLIF Bars relying on the accuracy of Clif's labeling

13  and Clif's labeling was material to Plaintiffs' decisions to purchase the CLIF Bars.   As a result of

14  Clif's alleged conduct, Plaintiffs have lost money.

15      135.   Clif has obtained and continues to obtain money from members of the CLIF Bars

16  Damages Class through its unlawful acts and practices alleged in this Complaint.   As such, Plaintiffs

17  request that this Court cause Clif to restore this money to Plaintiffs and the CLIF Bars Damages

18  Class members and to disgorge the profits Clif made on these transactions.   Otherwise, Plaintiffs and

19  the CLIF Bars Damages Class may be irreparably harmed and/or denied an effective and complete

20  remedy if such an order is not granted.

21      136.   Plaintiffs also request that the Court declare Clif's CLIF Bars' labeling unlawful and

22  enjoin Clif from continuing to violate the UCL by selling, offering for sale, or distributing the

23  mislabeled CLIF Bars in California, or causing the mislabeled CLIF Bars to be distributed, sold, or

24  offered for sale in California.   Unless Clif is permanently enjoined from continuing to engage in

25  such violations of the UCL, future consumers of Clif's CLIF Bars will be harmed by Clif's acts and

26  practices in the same way as Plaintiffs.

27

28

CLASS ACTION COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF
Case No.:

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**THIRD CAUSE OF ACTION**
**("Fraudulent" Business Practices in Violation of the Unfair Competition Law ("UCL"),**
**Cal. Bus. & Prof. Code §§ 17200,** *et seq.***)**

**A.      Third Cause of Action Relating to Purchases of Clif's LUNA Bars**

137.     Plaintiff Cheslow hereby incorporates all other paragraphs of this Complaint and restates them as if fully set forth herein.

138.     Plaintiff Cheslow brings this claim on behalf of herself, the LUNA Bars Damages Class, and the LUNA Bars Declaratory/Injunctive Class.

139.     The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising.  Cal. Bus. Prof. Code § 17200.

140.     A business act or practice is "fraudulent" under the UCL if it actually deceives or is likely to deceive members of the consuming public.

141.     As described throughout this Complaint, Clif's LUNA Bars' labeling with Healthy Nutrient Content Claims when they contain too much fat and saturated fat to qualify for such a claim actually deceives and is likely to deceive members of the consuming public into believing the products are something they are not.

142.     Clif continues to violate the UCL through its ongoing fraudulent acts and practices as described herein.

143.     As described herein, Clif obtained money from Plaintiff Cheslow through its unlawful acts and practices because Plaintiff Cheslow purchased the LUNA Bars relying on the accuracy of Clif's labeling and Clif's mislabeling was material to Plaintiff Cheslow's decision to purchase the LUNA Bars.  As a result of Clif's alleged conduct, Plaintiff Cheslow has lost money.

144.     Clif has obtained and continues to obtain money from members of the LUNA Bars Damages Class through its unlawful acts and practices alleged in this Complaint.  As such, Plaintiff Cheslow requests that this Court cause Clif to restore this money to Plaintiff Cheslow and the LUNA Bars Damages Class members and to disgorge the profits Clif made on these transactions.

CLASS ACTION COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF
Case No.:

1   Otherwise, Plaintiff Cheslow and the LUNA Bars Damages Class may be irreparably harmed and/or

2   denied an effective and complete remedy if such an order is not granted.

3       145.    Plaintiff Cheslow also requests that the Court declare Clif's LUNA Bars' labeling

4   unlawful and enjoin Clif from continuing to violate the UCL by selling, offering for sale, or

5   distributing the mislabeled LUNA Bars in California, or causing the mislabeled LUNA Bars to be

6   distributed, sold, or offered for sale in California.  Unless Clif is permanently enjoined from

7   continuing to engage in such violations of the UCL, future consumers of Clif's LUNA Bars will be

8   harmed by Clif's acts and practices in the same way as Plaintiff Cheslow.

9           **B.    Third Cause of Action Relating to Purchases of Clif's CLIF Bars**

10      146.    Plaintiffs hereby incorporate all other paragraphs of this Complaint and restate them

11  as if fully set forth herein.

12      147.    Plaintiffs bring this claim on behalf of themselves, the CLIF Bars Damages Class,

13  and the CLIF Bars Declaratory/Injunctive Class.

14      148.    The UCL defines unfair business competition to include any "unlawful, unfair or

15  fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising.  Cal.

16  Bus. Prof. Code § 17200.

17      149.    A business act or practice is "fraudulent" under the UCL if it actually deceives or is

18  likely to deceive members of the consuming public.

19      150.    As described throughout this Complaint, Clif's CLIF Bars' labeling with Healthy

20  Nutrient Content Claims when they contain too much fat and/or saturated fat to qualify for such a

21  claim actually deceives and is likely to deceive members of the consuming public into believing the

22  products are something they are not.

23      151.    Clif continues to violate the UCL through its ongoing fraudulent acts and practices as

24  described herein.

25      152.    As described herein, Clif obtained money from Plaintiffs through its unlawful acts

26  and practices because Plaintiffs purchased the CLIF Bars relying on the accuracy of Clif's labeling

27  and Clif's mislabeling was material to Plaintiffs' decisions to purchase the CLIF Bars.  As a result of

28  Clif's alleged conduct, Plaintiffs have lost money.

CLASS ACTION COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF
Case No.:

153. Clif has obtained and continues to obtain money from members of the CLIF Bars Damages Class through its unlawful acts and practices alleged in this Complaint. As such, Plaintiffs request that this Court cause Clif to restore this money to Plaintiffs and the CLIF Bars Damages Class members and to disgorge the profits Clif made on these transactions. Otherwise, Plaintiffs and the CLIF Bars Damages Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

154. Plaintiffs also request that the Court declare Clif's CLIF Bars' labeling unlawful and enjoin Clif from continuing to violate the UCL by selling, offering for sale, or distributing the mislabeled CLIF Bars in California, or causing the mislabeled LUNA Bars to be distributed, sold, or offered for sale in California. Unless Clif is permanently enjoined from continuing to engage in such violations of the UCL, future consumers of Clif's CLIF Bars will be harmed by Clif's acts and practices in the same way as Plaintiffs.

### FOURTH CAUSE OF ACTION
#### (False Advertising in Violation of the False Advertising Law ("FAL")
#### Cal. Bus. & Prof. Code §§ l7500, *et seq.*)

**B.     Fourth Cause of Action Relating to Purchases of Clif's LUNA Bars**

155. Plaintiff Cheslow hereby incorporates all other paragraphs of this Complaint and restates them as if fully set forth herein.

156. Plaintiff Cheslow brings this claim on behalf of herself, the LUNA Bars Damages Class, and the LUNA Bars Declaratory/Injunctive Class.

157. Clif uses advertising on the LUNA Bars' packaging to sell the LUNA Bars. Clif disseminates advertising concerning the LUNA Bars which is deceptive, untrue, or misleading within the meaning of the FAL because Clif's mislabeling is misleading, likely to deceive, and continues to deceive members of the LUNA Bars Classes and the general public as described throughout this Complaint.

158. In making or disseminating the LUNA Bars' labeling described herein, Clif knew or should have known that the LUNA Bars' labeling was misleading and acted in violation of the FAL.

57

CLASS ACTION COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF
Case No.:

159.    Clif's material nondisclosures and misrepresentations as described throughout this Complaint constitute false and misleading advertising and therefore violate the FAL.

160.    As described herein, Clif obtained money from Plaintiff Cheslow through its unlawful acts and practices because Plaintiff Cheslow purchased the LUNA Bars relying on the accuracy of Clif's labeling, and Clif's mislabeling was material to Plaintiff Cheslow's decision to purchase the LUNA Bars.  As a result of Clif's conduct, Plaintiff Cheslow has lost money.

161.    Clif has obtained and continues to obtain money from members of the LUNA Bars Damages Class through its unlawful acts and practices alleged in this Complaint.  As such, Plaintiff Cheslow requests that this Court cause Clif to restore this money to Plaintiff Cheslow and LUNA Bars Damages Class members and to disgorge the profits Clif made on these transactions. Otherwise, the LUNA Bars Damages Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

162.    Plaintiff Cheslow also requests the Court declare Clif's LUNA Bars' labeling unlawful and enjoin Clif from continuing to violate the UCL by selling, offering for sale, or distributing the mislabeled LUNA Bars in California, or causing the mislabeled LUNA Bars to be distributed, sold, or offered for sale in California.   Unless Clif is permanently enjoined from continuing to engage in such violations of the UCL, future consumers of Clif's LUNA Bars will be harmed by Clif's acts and practices in the same way as Plaintiff Cheslow.

A.    **Fourth Cause of Action Relating to Purchases of Clif's CLIF Bars**

163.    Plaintiffs hereby incorporate all other paragraphs of this Complaint and restate them as if fully set forth herein.

164.    Plaintiffs bring this claim on behalf of themselves, the CLIF Bars Damages Class, and the CLIF Bars Declaratory/Injunctive Class.

165.    Clif uses advertising on the CLIF Bars' packaging to sell the CLIF Bars.   Clif disseminates advertising concerning the CLIF Bars which is deceptive, untrue, or misleading within the meaning of the FAL because Clif's mislabeling is misleading, likely to deceive, and continues to deceive members of the CLIF Bars Classes and the general public as described throughout this Complaint.

CLASS ACTION COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF
Case No.:

166.   In making or disseminating the CLIF Bars' labeling described herein, Clif knew or should have known that the CLIF Bars' labeling was misleading and acted in violation of the FAL.

167.   Clif's material nondisclosures and misrepresentations as described throughout this Complaint constitute false and misleading advertising and therefore violate the FAL.

168.   As described herein, Clif obtained money from Plaintiffs through its unlawful acts and practices because Plaintiffs purchased the CLIF Bars relying on the accuracy of Clif's labeling, and Clif's mislabeling was material to Plaintiffs' decisions to purchase the CLIF Bars.  As a result of Clif's conduct, Plaintiffs have lost money.

169.   Clif has obtained and continues to obtain money from members of the CLIF Bars Damages Class through its unlawful acts and practices alleged in this Complaint.  As such, Plaintiffs request that this Court cause Clif to restore this money to Plaintiffs and CLIF Bars Damages Class members and to disgorge the profits Clif made on these transactions.  Otherwise, the CLIF Bars Damages Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

170.   Plaintiffs also request the Court declare Clif's CLIF Bars' labeling unlawful and enjoin Clif from continuing to violate the UCL by selling, offering for sale, or distributing the mislabeled CLIF Bars in California, or causing the mislabeled CLIF Bars to be distributed, sold, or offered for sale in California.  Unless Clif is permanently enjoined from continuing to engage in such violations of the UCL, future consumers of Clif's CLIF Bars will be harmed by Clif's acts and practices in the same way as Plaintiffs.

**FIFTH CAUSE OF ACTION**
**(Violation of the Consumers Legal Remedies Act ("CLRA"),**
**Cal. Civ. Code §§ 1750, *et seq.*)**

**A.    Fifth Cause of Action Relating to Purchases of Clif's LUNA Bars**

171.   Plaintiff Cheslow hereby incorporates all other paragraphs of this Complaint and restates them as if fully set forth herein.

172.   Plaintiff Cheslow brings this claim on behalf of herself, the LUNA Bars Damages Class, and the LUNA Bars Declaratory/Injunctive Class.

59
CLASS ACTION COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF
Case No.:

173.    Plaintiff Cheslow and each member of the LUNA Bars Classes are "consumers" within the meaning of Cal. Civ. Code § 1761(d).

174.    Plaintiff Cheslow's purchases of Clif's LUNA Bars are "transactions" within the meaning of Cal. Civ. Code § 1761(e), and Clif's LUNA Bars are "goods" within the meaning of Cal. Civ. Code § 1761(a).

175.    Clif violated and continues to violate the CLRA in at least the following respects:

a.    In violation of Cal. Civ. Code § 1770(a)(5), Clif represented that the LUNA Bars had characteristics which they did not have;

b.    In violation of Cal. Civ. Code § 1770(a)(7), Clif represented that the LUNA Bars were of a particular standard, quality, or grade, which they were not; and

c.    In violation of Cal. Civ. Code § 1770(a)(9), Clif advertised the LUNA Bars with the intent not to provide what it advertised.

176.    Clif knew or should have known that its LUNA Bars' mislabeling as alleged throughout this Complaint violated consumer-protection laws and that the LUNA Bars' mislabeling was presumptively material to Plaintiff Cheslow and the members of the LUNA Bars Classes.  Clif's mislabeling of the LUNA Bars as described herein is willful, wanton, and done with reckless disregard for the interests of Plaintiff Cheslow and the LUNA Bars Classes.

177.    As alleged throughout this Complaint, Plaintiff Cheslow purchased Clif's LUNA Bars relying on the accuracy of the LUNA Bars' labeling, and Clif's mislabeling of the LUNA Bars was material to Plaintiff Cheslow's decision to purchase the LUNA Bars.

178.    As described herein, Clif obtained money from Plaintiff Cheslow through its unlawful acts and practices because Plaintiff Cheslow purchased the LUNA Bars relying on the accuracy of Clif's labeling and Clif's mislabeling was material to Plaintiff Cheslow's decision to purchase the LUNA Bars.  As a result of Clif's alleged conduct, Plaintiff Cheslow has lost money.

179.    Because Clif failed to respond to Plaintiff Cheslow's CLRA letter as detailed in ¶¶ 67–70, *supra*, and stated in response to a prior letter that it would not change its LUNA Bars labeling to address the mislabeling at issue in the Complaint as detailed in ¶¶ 64–66, 70, *supra*,

CLASS ACTION COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF
Case No.:

1   Plaintiff Cheslow is entitled under the CLRA to actual damages, statutory damages, and/or punitive

2   damages.

3   180.   Plaintiff Cheslow also requests that the Court declare Clif's LUNA Bars' labeling

4   unlawful and enjoin Clif from continuing to violate the CLRA by selling, offering for sale, or

5   distributing the mislabeled LUNA Bars in California, or causing the mislabeled LUNA Bars to be

6   sold or offered for sale in California.  Unless Clif is permanently enjoined from continuing to engage

7   in such violations of the CLRA, future consumers of Clif's LUNA Bars will be harmed by Clif's acts

8   and practices in the same way as Plaintiff Cheslow.

9   181.   Plaintiff Cheslow requests that the Court award Plaintiff Cheslow court costs and

10  attorneys' fees pursuant to the CLRA, Cal. Civ. Code § 1780(e).

11  **B.     Fifth Cause of Action Relating to Purchases of Clif's CLIF Bars**

12  182.   Plaintiffs hereby incorporate all other paragraphs of this Complaint and restate them

13  as if fully set forth herein.

14  183.   Plaintiffs bring this claim on behalf of themselves, the CLIF Bars Damages Class,

15  and the CLIF Bars Declaratory/Injunctive Class.

16  184.   Plaintiffs and each member of the CLIF Bars Classes are "consumers" within the

17  meaning of Cal. Civ. Code § 1761(d).

18  185.   Plaintiffs' purchases of Clif's CLIF Bars are "transactions" within the meaning of

19  Cal. Civ. Code § 1761(e), and Clif's CLIF Bars are "goods" within the meaning of Cal. Civ. Code

20  § 1761(a).

21  186.   Clif violated and continues to violate the CLRA in at least the following respects:

22  d.     In violation of Cal. Civ. Code § 1770(a)(5), Clif represented that the CLIF Bars had

23  characteristics which they did not have;

24  e.     In violation of Cal. Civ. Code § 1770(a)(7), Clif represented that the CLIF Bars were

25  of a particular standard, quality, or grade, which they were not; and

26  f.     In violation of Cal. Civ. Code § 1770(a)(9), Clif advertised the CLIF Bars with the

27  intent not to provide what it advertised.

28

CLASS ACTION COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF
Case No.:

187.    Clif knew or should have known that its CLIF Bars' mislabeling as alleged throughout this Complaint violated consumer-protection laws and that the CLIF Bars' mislabeling was presumptively material to Plaintiffs and the members of the CLIF Bars Classes.   Clif's mislabeling of the CLIF Bars as described herein is willful, wanton, and done with reckless disregard for the interests of Plaintiffs and the CLIF Bars Classes.

188.    As alleged throughout this Complaint, Plaintiffs purchased Clif's CLIF Bars relying on the accuracy of the CLIF Bars' labeling, and Clif's mislabeling of the CLIF Bars was material to Plaintiffs' decisions to purchase the CLIF Bars.

189.    As described herein, Clif obtained money from Plaintiffs through its unlawful acts and practices because Plaintiffs purchased the CLIF Bars relying on the accuracy of Clif's labeling and Clif's mislabeling was material to Plaintiffs' decisions to purchase the CLIF Bars.  As a result of Clif's alleged conduct, Plaintiffs have lost money.

190.    Because Clif failed to provide, or agree to provide within a reasonable time after receiving Plaintiff Perieff's CLRA letter, an appropriate correction, repair, replacement, or other remedy as detailed in ¶¶ 64–66, 70, *supra*, Plaintiff Perieff is entitled under the CLRA to actual damages, statutory damages, and/or punitive damages.

191.    Plaintiffs also request that the Court declare Clif's CLIF Bars' labeling unlawful and enjoin Clif from continuing to violate the CLRA by selling, offering for sale, or distributing the mislabeled CLIF Bars in California, or causing the mislabeled CLIF Bars to be sold or offered for sale in California.  Unless Clif is permanently enjoined from continuing to engage in such violations of the CLRA, future consumers of Clif's CLIF Bars will be harmed by Clif's acts and practices in the same way as Plaintiffs.

192.    Plaintiffs request that the Court award Plaintiffs court costs and attorneys' fees pursuant to the CLRA, Cal. Civ. Code § 1780(e).

### SIXTH CAUSE OF ACTION
### (Quasi Contract)

**A.    Sixth Cause of Action Relating to Purchases of Clif's LUNA Bars**

CLASS ACTION COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF
Case No.:

193.    Plaintiff Cheslow hereby incorporates all other paragraphs of this Complaint and restates them as if fully set forth herein.

194.    Plaintiff Cheslow brings this claim on behalf of herself and the LUNA Bars Damages Class.

195.    Clif's conduct in enticing Plaintiff Cheslow and the LUNA Bars Damages Class to purchase its LUNA Bars through the false and misleading labeling as described throughout this Complaint is unlawful because the statements contained on the LUNA Bars' labels are false, misleading, and violate the FDCA, the Sherman Law, and FDA regulations.  Clif obtained money from Plaintiff Cheslow and members of the LUNA Bars Damages Class for LUNA Bars labeled with Healthy Nutrient Content Claims that did not comply with the FDA's and California's parallel requirements for such claims.

196.    Clif has been unjustly enriched at the expense of Plaintiff Cheslow and the LUNA Bars Damages Class as result of its unlawful conduct alleged herein, thereby creating a quasi-contractual obligation on Clif to restore these ill-gotten gains to Plaintiff Cheslow and the LUNA Bars Damages Class.

197.    As a direct and proximate result of Clif's breach of its quasi-contractual obligation by unjustly enriching itself at Plaintiff Cheslow's and the LUNA Bars Damage Class' expense, Plaintiff Cheslow and the LUNA Bars Damages Class are entitled to restitution or restitutionary disgorgement in an amount to be proved at trial.

**B.    Sixth Cause of Action Relating to Purchases of Clif's CLIF Bars**

198.    Plaintiffs hereby incorporate all other paragraphs of this Complaint and restate them as if fully set forth herein.

199.    Plaintiffs bring this claim on behalf of themselves and the CLIF Bars Damages Class.

200.    Clif's conduct in enticing Plaintiffs and the CLIF Bars Damages Class to purchase its CLIF Bars through the false and misleading labeling as described throughout this Complaint is unlawful because the statements contained on the CLIF Bars' labels are false, misleading, and violate the FDCA, the Sherman Law, and FDA regulations.  Clif obtained money from Plaintiffs and

CLASS ACTION COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF
Case No.:

1   members of the CLIF Bars Damages Class for CLIF Bars labeled with Healthy Nutrient Content

2   Claims that did not comply with the FDA's and California's parallel requirements for such claims.

3        201.   Clif has been unjustly enriched at the expense of Plaintiffs and the CLIF Bars

4   Damages Class as result of its unlawful conduct alleged herein, thereby creating a quasi-contractual

5   obligation on Clif to restore these ill-gotten gains to Plaintiffs and the CLIF Bars Damages Class.

6        202.   As a direct and proximate result of Clif's breach of its quasi-contractual obligation by

7   unjustly enriching itself at Plaintiffs' and the CLIF Bars Damage Class' expense, Plaintiffs and the

8   CLIF Bars Damages Class are entitled to restitution or restitutionary disgorgement in an amount to

9   be proved at trial.

10                                    **PRAYER**

11       Plaintiffs, on behalf of themselves and all members of the CLIF Bars Classes, and Plaintiff

12   Cheslow, on behalf of herself and all members of the LUNA Bars Classes, request that the Court

13   order the following relief and enter judgment against Clif as follows:

14       A.     An order certifying that this action is properly brought and may be maintained as a

15   class action, that Plaintiff Cheslow be appointed Class Representative for the LUNA Bars Classes

16   and CLIF Bar Classes, that Plaintiff Perieff be appointed Class Representative for the CLIF Bars

17   Classes, and that Plaintiffs' counsel be appointed Class Counsel for the LUNA Bars and CLIF Bars

18   Classes.

19       B.     An order on behalf of Plaintiffs and the CLIF Bars Declaratory/Injunctive Class, and

20   Plaintiff Cheslow and the LUNA Bars Declaratory/Injunctive Class, declaring that Clif's mislabeling

21   of the LUNA Bars and CLIF Bars as described herein is unlawful.

22       C.     An order on behalf of Plaintiffs and the CLIF Bars Declaratory/Injunctive Class, and

23   Plaintiff Cheslow and the LUNA Bars Declaratory/Injunctive Class, enjoining Clif from selling,

24   distributing, or offering for sale the mislabeled LUNA Bars and CLIF Bars in California, or causing

25   the mislabeled LUNA Bars and CLIF Bars to be distributed, sold, or offered for sale in California.

26       D.     An order awarding Plaintiffs their costs of suit, including reasonable attorneys' fees

27   and expenses under the CLRA (Cal. Civ. Code § 1780(e)), Cal. Civ. Proc. Code § 1021.5, or as

28   otherwise provided by law.

CLASS ACTION COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF
Case No.:

E.      Restitution in such amount that Plaintiffs and the CLIF Bars Damages Class members, and Plaintiff Cheslow and the LUNA Bars Damages Class members, paid to purchase Clif's LUNA Bars and CLIF Bars, paid as a premium over similar products that did not bear Healthy Nutrient Content Claims, or restitutionary disgorgement of the profits Clif obtained from these transactions, for Causes of Action for which they are available.

F.      Compensatory damages on behalf of Plaintiffs and the CLIF Bars Damages Class, and Plaintiff Cheslow and the LUNA Bars Damages Class, for Causes of Action for which they are available.

G.      Statutory damages on behalf of Plaintiffs and the CLIF Bars Damages Class, and Plaintiff Cheslow and the LUNA Bars Damages Class, allowable under Cal. Civ. Code § 1780.

H.      Other statutory penalties on behalf of Plaintiffs and the CLIF Bars Damages Class, and Plaintiff Cheslow and the LUNA Bars Damages Class, for Causes of Action for which they are available.

I.       Punitive damages on behalf of Plaintiffs and the CLIF Bars Damages Class, and Plaintiff Cheslow and the LUNA Bars Damages Class, for Causes of Action for which they are available.

J.       Such other and further relief as may be available as part of the statutory claims asserted herein or otherwise as may be deemed necessary or appropriate for any of the claims asserted.

DATED:  March 4, 2016

**FINKELSTEIN THOMPSON LLP**
One California Street, Suite 900
San Francisco, CA 94111
Tel.: (415) 398-8700
Fax: (415) 398-8704

Joseph N. Kravec, Jr. (*pro hac* to be filed)
Wyatt A. Lison (*pro hac* to be filed)
**FEINSTEIN DOYLE**
  **PAYNE & KRAVEC, LLC**
429 Forbes Avenue
Allegheny Building, Suite 1705
Pittsburgh, PA 15219
Tel.: 412-281-8400
Fax: 412-281-1007
Email: jkravec@fdpklaw.com

CLASS ACTION COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF
Case No.:

wlison@fdpklaw.com

Jason B. Adkins (*pro hac* to be filed)
**ADKINS, KELSTON & ZAVEZ, P.C.**
90 Canal Street, 5th Floor
Boston, MA 02114
Tel.: (617) 367-1040
Fax: (617) 742-8280
Email: jadkins@akzlaw.com

***ATTORNEYS FOR PLAINTIFFS***
***AND THE PROPOSED CLASSES***

CLASS ACTION COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF
Case No.: