CHRISTOPHER VAN GUNDY - SBN 152359
vangundy@khlaw.com
ROBERT S. NIEMANN - SBN 87973
niemann@khlaw.com
**KELLER AND HECKMAN, LLP**
Three Embarcadero Center, Suite 1420
San Francisco, CA 94111
Telephone: 415 948 2800
Facsimile: 415 948 2808

Attorneys for Defendant CLIF BAR & COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREG PERIEFF and LINDA CHESLOW, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>vs.<br><br>CLIF BAR & COMPANY,<br><br>        Defendant. | Case No. 4:16-cv-01708-JSW<br><br>**DEFENDANT CLIF BAR & COMPANY'S NOTICE OF MOTION, MOTION TO DISMISS COMPLAINT AND MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[Fed. R. Civ. Proc. 12(b)(1) & 12(b)(6)]<br><br>Judge:         Honorable Jeffrey S. White<br>Courtroom:   5 (Oakland Division)<br>Hearing Date:  May 27, 2016<br>Hearing Time:  9:00 a.m.<br>Action Filed:   April 6, 2016<br>Trial Date:     TBD |

TO THE CLERK OF THE ABOVE-ENTITLED COURT AND TO PLAINTIFFS AND THEIR

ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that, on Friday, May 27, 2016 at 9:00 a.m., or as soon thereafter

as counsel may be heard by the Honorable Jeffrey S. White, in Courtroom 5 of the above-titled Court,

located at 1301 Clay Street, Oakland, CA 94612, Defendant Clif Bar & Company ("Clif Bar") will, and

hereby does, move the Court for an order dismissing, without leave to amend, the Complaint (or those

portions of the Complaint that fail to state a claim upon which relief may be granted), filed by Plaintiffs

Greg Perieff and Linda Cheslow ("Plaintiffs"). In the alternative, Clif Bar will, and does hereby move

the Court for an order of dismissal without prejudice or a stay of this action on the grounds of primary jurisdiction.

This Motion is made on the following grounds:

1.     All of Plaintiffs' claims fail because they have not alleged them with the requisite particularity for fraud. *See* Fed. R. Civ. Proc. 9(b); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003); *Bly-Magee v. State of Cal.*, 236 F.3d 1014 (9th Cir. 2001).

2.     Plaintiffs fail to state a claim because no reasonable consumer would be deceived by Clif Bar's use of the terms "health," "nutritious," "wholesome," "good for both our bodies and the planet," and/or "keep kids going, growing, and exploring." *See Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496 (2003).

3.     The Court lacks subject matter jurisdiction with respect to each of Plaintiffs' claims because they have not alleged that they have suffered an immediate injury and/or injury-in-fact and, therefore, lack standing. *See* U.S. Const., Art. III; *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992); *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011).

4.     Plaintiffs lack standing to pursue prospective injunctive relief because they have not alleged that they will continue to purchase the challenged products in the future. *See Wang v. OCZ Tech. Grp., Inc.*, 276 F.R.D. 618 (N.D. Cal. 2011); *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037 (9th Cir. 1999).

5.     Alternatively, the Court respectfully should stay or dismiss this action on the grounds of primary jurisdiction because the federal regulations that serve as the basis of Plaintiffs' claims are subject to a Citizens Petition that would moot this lawsuit, particularly where FDA itself has questioned the continued validity of those regulations. *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008).

This Motion is based upon this Notice of Motion and Motion; the attached Memorandum of Points and Authorities; all the pleadings and papers on file in this action; and upon such oral argument and other matters as may be presented to the Court at the time of the hearing.

Dated:  April 13, 2016                    KELLER AND HECKMAN, LLP


                                          By: _____
                                              Christopher Van Gundy

                                          Attorneys for Defendant Clif Bar & Company

## TABLE OF CONTENTS

SUMMARY OF ARGUMENT ............................................................................................. IV

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................. 1

I.    INTRODUCTION .................................................................................................... 1

II.    PLAINTIFF'S ALLEGATIONS .................................................................................. 2

    A.    Greg Perieff ................................................................................................ 2

    B.    Linda Cheslow ........................................................................................... 3

III.    APPLICABLE LEGAL STANDARDS ....................................................................... 3

IV.    ARGUMENT .......................................................................................................... 4

    A.    The Complaint Fails to State Claims for Which Relief May Be Granted in a Number of Respects. ................................................................................ 4

        1.    Plaintiffs Fail Adequately to Plead the Elements of Fraud ........................ 4

            a.    Plaintiffs' claims for relief sound in fraud ...................................... 4

            b.    Plaintiffs' fail to plead with specificity a false representation. ................................................................................ 6

            c.    Plaintiffs fail to plead damages with the requisite specificity. ........ 9

            d.    Plaintiffs' have failed to plead with specificity the remaining elements of fraud. ................................................... 10

            e.    Plaintiffs' claim for quasi-contract similarly fails. ...................... 10

        2.    Plaintiffs' Claims Are Not Plausible ................................................... 10

        3.    Plaintiffs' Have Not Pled Cognizable Injury Sufficient for Standing for the State-Law Consumer Protection Claims. ..................................... 12

        4.    Plaintiffs Do Not have Article III Standing to Seek Injunctive Relief ............................................................................................. 13

    B.    Alternatively, the Court Should Stay this Action on the Grounds of Primary Jurisdiction Pending FDA Determination of the Citizens Petition to Amend the Regulations at Issue ........................................................... 14

V.    CONCLUSION ................................................................................................ 15

**TABLE OF AUTHORITIES**

<u>Cases</u>

*Arroyo v. Pfizer, Inc.*, Case No. C-12-4030, 2013 WL 415607 (N.D. Cal. Jan. 31, 2013) ....................12

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ...........................................................................................3

*Barnes v. Campbell Soup Company*, No. C-12-05185-JSW, 2013 WL 5530017 at *8-9
(N.D. Cal. July 25, 2013) .......................................................................................................15

*Bell Atl Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ............................................................................3

*Carrea v. Dreyer's Grand Ice Cream*, 475 Fed. Appx. 113, 115 (9th Cir. 2012)....................................11

*Chapman v. Pier I Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011)..............................................13

*Daugherty v. American Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 839 (2006)................................8

*Davidson v. Kimberly-Clark Corporation*, 76 F. Supp. 3d 964, 969 (N.D. Cal. 2014) ..........................13

*Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913 (N.D. Cal. 2012) ............................................................10

*Erickson v. Pardus*, 551 U.S. 89, 93 (2007) ..........................................................................................3

*Gallagher v. Chipotle Mexican Grill, Inc.*, No. 15-cv-03952-HSG, 2016 WL 454083, at
*3-4 (N.D. Cal. Feb. 5, 2016) .......................................................................................... 11, 13

*Guttmann v. Nissin Foods (U.S.A.) Company, Inc.*, No. C 15-00567-WHA, 2015 WL
4881073 (N.D. Cal. Aug. 14, 2015)..........................................................................................9

*Harmon v. Hilton Grp., PLC*, 554 Fed. Appx 634, 635 (9th Cir. 2014) ..................................................5

*Hawkins v. The Kroger Company*, No. 15cv2320 JM(BLM) (S.D. Cal. Mar. 17, 2016) ........................12

*Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199-1200 (9th Cir. 1995) .............................................................3

*Kane v. Chobani, Inc.*, No. 12-cv-02425-LHK, 2013 WL 5289253 .......................................................4

*McKinniss v. Sunny Delight Beverages Co.*, No. CV 07–02034–RGK (JCx), 2007 WL
4766525, at *4 (C.D. Cal. Sept. 4, 2007)................................................................................11

*Moore v. Brewster*, 96 F.3d 1240, 1245 (9th Cir. 1996) ........................................................................5

*Nagy v. Nagy*, 210 Cal. App. 3d 1262 (1989) ......................................................................................10

*Pelayo v. Nestle USA, Inc.*, 989 F. Supp. 2d 973, 978 (C.D. Cal. 2013) ..............................................11

*Pom Wonderful, LLC v. Coca-Cola Co.*, 679 F.3d 1170, 1176 (9th Cir. 2002) .....................................15

*Rojas-Lozano v. Google, Inc.*, No. 15-cv-03751-JSC, 2016 WL 429794 (N.D. Cal.
February 3, 2016) ...................................................................................................................10

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101-102 (1998).....................................................4

*Syntek Semiconductor Co. v. Microchip Tech., Inc.*, 307 F.3d 775, 781 (9th Cir. 2002) ........................14

DEFENDANT CLIF BAR & COMPANY'S NOTICE OF MOTION, MOTION TO DISMISS COMPLAINT
AND MEMORANDUM OF POINTS AND AUTHORITIES

*United States ex rel Ebeid v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) ................................4

*Vess v. Ciba Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir.2003) ...........................................4

*Williams v. Gerber Prods. Co.*, 552 F.3d 934 (9th Cir. 2008)...................................................12

## Other Authorities

59 Fed. Reg. 24232-01 ................................................................................................ 6,7, 8, 9

79 Fed. Reg. 11880-01, at 11881, 2014 WL 794562 .......................................................... 8, 15

## Regulations

21 C.F.R. § 101.62(c)(2)(1) ...............................................................................................7

21 C.F.R. § 101.65(d)................................................................................................. 1, 4

21 C.F.R. § 101.65(d)(1) ........................................................................................... 6, 14

21 C.F.R. §§ 101.65(d)(2) .......................................................................................... 6, 15

21 C.F.R. §101.65(d) .......................................................................................... 1, 6, 15

21 C.F.R. §101.9(d)(9)(i) ....................................................................................................7

## Rules

Federal Rule of Civil Procedure 8(a)(2)............................................................................3

Federal Rule of Civil Procedure 9(b) ..............................................................................4

Federal Rule of Civil Procedure 12(b)(1) .........................................................................4

Federal Rule of Civil Procedure 12(b)(6) .........................................................................3

DEFENDANT CLIF BAR & COMPANY'S NOTICE OF MOTION, MOTION TO DISMISS COMPLAINT
AND MEMORANDUM OF POINTS AND AUTHORITIES

**SUMMARY OF ARGUMENT**

All of Plaintiffs' claims sound in fraud, and therefore, Plaintiffs must plead the essential elements of fraud to survive a motion to dismiss. *Bruton v. Gerber Products Company*, No. 12–CV–02412–LHK, 2014 WL 7206633, at *7-8 (N.D. Cal. Dec. 18, 2014). Plaintiffs' claims all fail because they have not alleged them with the requisite particularity for fraud. See Fed. R. Civ. P. 9(b). The elements of fraud are a false representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003); *Bly-Magee v. State of Cal.*, 236 F.3d 1014 (9th Cir. 2001).

Plaintiffs fail to allege a false representation with requisite specificity and thus all claims are subject to dismissal pursuant to Fed. R. Civ. P. 12(b)(6). For example, Plaintiffs claim that they were duped into believing that Clif Bar's "health nutrient content claims" on product labeling falsely led Plaintiffs to believe that these products would "help them maintain healthy dietary practices," but nowhere do Plaintiffs allege that consuming the challenged products in fact prevented them from maintaining those healthy dietary practices. Moreover, Plaintiffs' fraud claims are not plausible and can be dismissed for this separate and independent reason as well. *Ebner v. Fresh, Inc.*, No. 13–56644, 2016 WL 1056088 at *4-5 (9th Cir. Mar. 17, 2016).

Plaintiffs' consumer protection statute claims are also subject to dismissal pursuant to Fed. R. Civ. P. 12(b)(1) because they fail to plead sufficient statutory standing. Plaintiffs cannot establish the requisite "immediate cause" because they purchased the challenged products for two years and did nothing, even though the fat levels indisputably were disclosed correctly. *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 825 n.1 (9th Cir. 2011). They also fail to plead "cognizable injury" because their claims of deception and injury are too generalized and unspecific. *Simpson v. Cal Pizza Kitchen, Inc.*, 989 F. Supp.2d 1015 (S.D. Cal. 2013).

Finally, the Court should stay or dismiss without prejudice this action on the grounds of primary jurisdiction. There is currently pending before FDA a Citizen Petition requesting the FDA to revise the very regulations that form the predicate violations for Plaintiffs' claims. This could moot Plaintiffs' claims. *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008).

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Clif Bar is the leading national brand of energy and nutrition bars that are sourced almost exclusively from organic ingredients, are good tasting, and are packed with nutrients including high levels of protein, fiber, and caloric energy for active adults and kids.  On a few bars for women under the LUNA line, Clif Bar used terms such as "essential to women's health" where nutrient content claims were made (*e.g.* 12g protein), and on other products terms such as "nutritious," "wholesome," "good for both our bodies and the planet," and/or "keep kids going, growing, and exploring" appeared on package labels that also contained nutrient content claims.  As more fully explained below, Plaintiffs claim deception based on the absurd proposition that a reasonable consumer would interpret "health" (or its alleged equivalents, "wholesome, "nutritious," "good for you") to mean levels of total fat and saturated fat deemed by FDA as "useful" or "particularly useful" in meeting 1994 dietary guidelines.

Plaintiffs do not allege that Clif Bar's products containing fat levels above prescribed limits permitted for such "health" nutrient content label claims were unhealthy or detrimental to Plaintiffs' health, only that they were deceived by them and "reasonable consumers" into thinking that such products were in technical compliance with the definition of "health" for nutrient content claims in FDA regulations.  *See* 21 C.F.R. §101.65(d).  These regulations were promulgated by FDA in 1994, and, as explained by FDA in the preamble to the Final Rule, defined "health" used in connection with nutrient content claims mean products with levels of total fat and saturated fat within certain limits as "useful" or "particularly useful" in meeting then current 1994 dietary guidelines.  Therefore, Plaintiffs claim that they were duped into buying the challenged product because the term "health" meant the product could "help" them maintain "healthy dietary practices," but nowhere do Plaintiffs plead, as they must, that consumption of the products in fact prevented them from healthy dietary practices.

Plaintiffs' tortured attempt to plead fraud through alleged non-compliance with the health nutrient content regulations as to fat levels is not actionable and completely implausible, particularly where the relevant fat levels are accurately disclosed in the familiar "Nutrition Facts" panel.  It is highly unreasonable for Plaintiffs to claim that a reasonable consumer would only interpret "health" nutrient content claims to mean a product with certain fat levels as "particularly useful" in meeting 1994 dietary

guidelines – higher than permitted fat levels obviously could mean that the product is "less useful" but generally "healthy" nonetheless. Consumers in fact reasonably would interpret the word "health" appearing on a label with "3g fiber" (a nutrient content claim) to mean many things unrelated to fat levels, such as a product high in fiber, and particularly with the challenged Clif Bar products that are almost all organic, and are packed with indisputably "healthy" nutrients.

The Court can and should dismiss Plaintiffs' claims as futile with prejudice because their claims are highly implausible, do not adequately state a claim for relief as to any element of fraud, and fail to state injury sufficient to give them standing to sue. Alternatively, the Court should stay this case or dismiss on the grounds of primary jurisdiction because the very federal regulations at issue regarding "healthy nutrient content claims" have been questioned by the issuing agency, the U.S. Food & Drug Administration ("FDA"), and are the subject of a Citizen Petition by a major brand bar manufacturer for changes that would moot this lawsuit.

## II.    PLAINTIFF'S ALLEGATIONS

### A.    Greg Perieff

Plaintiff Greg Perieff ("Perieff") alleges that between February 2013 and September 2015, he purchased a variety of Clif Kid ZBar and Clif MOJO bars for himself and young cousins between February 2013 and September 2015. Each of the Clif Kid Organic Zbars and Clif Kid Protein Zbars that Perieff purchased allegedly contained labeling that used the words "nutritious," and/or "wholesome" and/or contained ingredients "to keep kids going, growing and exploring" on the same package as at least one nutrient statement such as "5g Protein." *Id.* Each of the Clif Mojo Sweet and Salty Trail Mix Bars that Perieff purchased contained labeling that used the phrase "good for both our bodies and the planet" on the same package as at least one nutrient statement such as "8g Protein." *Id.*

According to Perieff, he read and relied on the fact that a description (such as "nutritious") was on the same package as a nutrient statement ("5g Protein") (together a "nutrient content claim") when purchasing the product because he concluded the product would "help him or his young cousins maintain healthy dietary practices because of their nutrient content." Compl., ¶ 8. Perieff further alleges that the Clif Bar products did not meet the FDA's regulatory requirements for making a nutrient content claim because they had more fat and/or saturated fat than permitted to make "wholesome" or "nutritious"

DEFENDANT CLIF BAR & COMPANY'S NOTICE OF MOTION, MOTION TO DISMISS COMPLAINT
AND MEMORANDUM OF POINTS AND AUTHORITIES

claims. *Id.*  Had Perieff known that the Clif Bars at issue did not comply with the FDA's regulatory requirements, he alleges, he either would have (i) not purchased the products, (ii) been willing to pay less for them, (iii) purchased fewer of them, (iv) purchased alternative products, and/or (v) purchased a similar product that was less expensive. *Id.*

### B.    Linda Cheslow

Plaintiff Linda Cheslow ("Cheslow") alleges that between February 2013 and September 2015, she purchased a variety of Luna bars, Clif Mojo Sweet and Salty Trail Mix Bars, and Clif Organic Trail Mix Bars.  Compl., ¶ 9.  Each of the Luna Bars that Cheslow purchased contained labeling that used the word "health," on the same package as at least one nutrient statement such as "9g Protein."  Id.  Each of the other bars that Cheslow purchased also contained labeling that used the phrase "good for both our bodies and the planet" on the same package as at least one nutrient statement such as "8g Protein."  Id.

Plaintiff Cheslow makes virtually the same allegations for deception as Perieff.  See Compl., ¶9.  On the basis of these essential charging allegations, both Plaintiffs seek damages, restitution and injunctive relief under California's Consumer Legal Remedies Act, Cal. Civ. Code Section 1770 *et seq.* ("CLRA"), California's Unfair Competition Law ("UCL"), Cal. Business & Professions Code Section 17200, *et seq.,* and California's False Advertising Law ("FAL"), Cal. Business & Professions Code Section 17500, *et seq.*, and for quasi-contract.

## III.    APPLICABLE LEGAL STANDARDS

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure assesses the legal sufficiency of claims alleged in a complaint.  *See Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199-1200 (9th Cir. 1995).  While Rule 8(a)(2) of the Federal Rules of Civil Procedures requires that a complaint include only "a short and plain statement of the claim showing that the pleader is entitled to relief," a plaintiff must also plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While allegations of material fact are taken as true (*see Erickson v. Pardus*, 551 U.S. 89, 93 (2007)), conclusory statements not supported by factual allegations are disregarded.  *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

Moreover, when a plaintiff alleges fraud, Rule 9(b) of the Federal Rules of Civil Procedure requires that the plaintiff state with particularity the circumstances constituting fraud, including the "'who, what, when, where, and how'" of the charged misconduct. *See United States ex rel Ebeid v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (quoting *Vess v. Ciba Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir.2003). As the court in *Ebeid* explained, "the plaintiff must set forth what is false or misleading about a statement, and why it is false." *Ebeid*, 616 F.3d at 998.

A defendant may likewise move to dismiss an action for lack of subject matter jurisdiction pursuant to F.R.C.P. 12(b)(1). "If the plaintiff lacks standing under Article III of the U.S. Constitution, then the court lacks subject matter jurisdiction, and the case must be dismissed." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101-102 (1998). In addition to Article III, "the UCL, FAL, and CLRA all require Plaintiffs to demonstrate standing." *Kane v. Chobani, Inc.*, No. 12-cv-02425-LHK, 2013 WL 5289253, at *5 (N.D. Cal. Sept. 19, 2013). To establish this so-called "statutory standing," a plaintiff must allege reliance on the alleged misrepresentation, and to have suffered economic injury as a result. *Swearingen v. Pacific Foods of Oregon, Inc.*, No. 13-cv-04157-JD, 2014 WL 3767052 (N.D. Cal. Jul. 31, 2014).

## IV.    ARGUMENT

### A.    The Complaint Fails to State Claims for Which Relief May Be Granted in a Number of Respects.

#### 1.    Plaintiffs Fail Adequately to Plead the Elements of Fraud

##### a.    Plaintiffs' claims for relief sound in fraud.

All of Plaintiffs' claims for relief sound in fraud – they would not have bought the product had they known that the health statements allegedly were not permitted by FDA regulations due to total fat and saturated fat levels higher than those permitted to make such claims for the particular products challenged. The "health" or "wholesome" or "nutritious" label claims on Clif Bar products associated with nutrient content claims were supposedly deceptive because these statements did not comply with prescribed levels both for total fat and saturated fat acceptable for use of the term "health" (or its supposed equivalents – "wholesome," "nutritious" or "good for you") in association with nutrient content claims, in violation of FDA regulations, 21 C.F.R. § 101.65(d). Clif Bar's alleged violations of this

regulation, and therefore violations of the FDCA and California's Sherman Law, constitute the "predicate acts" for its various allegations under the UCL, FAL and CLRA, and for quasi-contract.

Plaintiffs' main charging allegation confirms this, phrased in the language of fraud: "Plaintiff Perieff read and relied on the Healthy Nutrient Content Claims . . .Had Plaintiff Perieff known the truth that the CLIF Bar's Healthy Nutrient Content Claims violated the FDA's requirements because the CLIF Bars had more total fat and/or saturated fat than permitted . . . ," Plaintiff Perieff would not have bought the products, would have bought fewer of them, would have bought supposedly less expensive competing products, etc.  Compl., ¶ 8; *see also* Compl., ¶ 9 (same allegations re Plaintiff Cheslow). Throughout their Complaint, Plaintiffs made it abundantly clear that their claims sound in fraud: "[t]he representations that Clif's LUNA Bars and CLIF Bars are healthy are false, misleading, and material to consumers' decisions to purchase Clif's LUNA Bars and CLIF Bars."  Compl., ¶ 5; see also Compl., ¶ 6: ("Clif's conduct alleged here is false, misleading, and unlawful in violation of the following provisions of California's Sherman Law: Cal Health & Safety Code § 110660 (prohibiting false and misleading labeling) . . . § 110760 (prohibiting manufacture, sale, delivery, etc. of misbranded food") . . . . (other citations omitted))"; see also Compl., ¶¶ 195, 200 (quasi-contract claims based on "false and misleading labeling").

It is beyond doubt that Plaintiffs' claims sound in fraud, and therefore must meet the pleading requirements of fraud, with the higher level of specificity required for fraud pleading pursuant to Rule 9(b) of the Federal Rules of Civil Procedure.  *Bruton v. Gerber Products Company*, No. 12–CV–02412–LHK, 2014 WL 7206633, at *7-8 (N.D. Cal. Dec. 18, 2014) (misbranding claims that involve alleged consumer deception sound in fraud); *Harmon v. Hilton Grp., PLC*, 554 Fed. Appx 634, 635 (9th Cir. 2014) ("UCL claims are governed by the 'reasonable consumer standard,' which requires evidence that 'members of the public are likely to be deceived").

Under California law, the "indispensable elements of a fraud claim include a false representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages."  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003) (*citing Moore v. Brewster*, 96 F.3d 1240, 1245 (9th Cir. 1996)).  Here, Plaintiffs' claims for relief flunk the fraud pleading standard in the first instance because they fail to allege any false representation, justifiable reliance on that representation, intent to defraud,

and damages arising from the alleged false representation.

      **b.**     **Plaintiffs' fail to plead with specificity a false representation.**

The sole label statement Plaintiffs rely on for the requisite false representation is the use of the term "health" or "healthy" (or what Plaintiffs view as the equivalent, such as "wholesome") made in connection with nutrient content statements, like "3g fiber." However, Plaintiffs fail to allege how this statement was allegedly deceptive. Plaintiffs do not allege that "healthy" was false, that they caused any plaintiff to suffer health detriments, or that Clif Bar's statement of nutrients was false.

Plaintiffs obviously cannot claim that the challenged products are "unhealthy," as they do not, because they do not allege and cannot dispute that these products are in the main organic, and contain important nutrients in the forms of protein, fiber, and, yes, fat. Instead, Plaintiffs claim that Clif Bar's use of the term "health" with a nutrient content claim was deceptive because the levels of fat in the challenged products were above limits permitted by FDA regulations designed to "help consumers maintain healthy dietary practices." Compl., ¶¶ 8, 9; 21 C.F.R. §101.65(d)(1). Plaintiffs are simply suing for alleged non-compliance with FDA regulations by gussying up statements from the regulations in the language of fraud without pleading the specific facts necessary for actual deception. *See Swearingen v. Pacific Foods of Oregon, Inc.*, No. 13-cv-04157-JD, 2014 WL 3767052 (N.D. Cal. Jul. 31, 2014) (plaintiffs challenge to defendant's use of "evaporated cane juice" as a false description of sugar was merely an "illegal products theory" warranting dismissal as a matter of law).

As FDA explained in the underlying regulations, implied nutrient content claims "(i) [s]uggest that a food because of its nutrient content *may help* consumers maintain healthy dietary practices (emphasis supplied); and (ii) Are made in connection with an explicit or implicit claim or statement about a nutrient (e.g., 'healthy, contains 3 grams of fat"). 21 C.F.R. §101.65(d)(1). If the fat levels for certain foods do not exceed certain levels, FDA permits a manufacturer to "use the term 'healthy' or . . . 'health' . . . as an implied nutrient content claim on the label or in labeling of a food that is useful in creating a diet that is consistent with dietary recommendations . . . ." 21 C.F.R. §101.65(d)(2). In the preamble to the Final Rule version of these regulations, entitled "Food Labeling: Nutrient Content Claims, Definition of Term: Healthy," 59 Fed. Reg. 24232-01, at 24233, 1994 WL 174523 at 2 (May 10, 1994), the FDA further explained that: "[t]he agency finds, therefore, that the fundamental purpose of a

**DEFENDANT CLIF BAR & COMPANY'S NOTICE OF MOTION, MOTION TO DISMISS COMPLAINT AND MEMORANDUM OF POINTS AND AUTHORITIES**

'healthy' claim is to highlight those foods that, based on their nutrient levels, are *particularly useful* in constructing a diet that conforms to current dietary guidelines." (emphasis supplied). A copy of 59 Fed. Reg. 24232-01 is attached to the Van Gundy Declaration as **Exhibit 1**.

On a motion to dismiss, the Court respectfully need not accept Plaintiffs' <u>*conclusion*</u> that Clif Bar's "health" nutrient content claims were deceptive because they supposedly failed to comply with FDA regulations.  For Plaintiffs to allege a sufficient false representation (and on which they relied to their detriment), they would have to plead *facts* as to whether and exactly how the statement was untrue – how did the challenged products prevent plaintiffs from "maintain[ing] healthy dietary practices?"  FDA statements that products with fat levels lower than those in the challenged products could "help" consumers maintain healthy dietary practices does not mean here that Clif Bar products in fact prevented plaintiffs from that goal.

For example, FDA regulations permit "healthy" nutrient content claims in products with 1 gram of saturated fat or less [21 C.F.R. 101.62(c)(2)(i)], with the "daily" value for saturated fat set at 20 grams for a 2000 calorie per day diet, and 25 grams for a 2500 calorie diet.  21 C.F.R. §101.9(d)(9)(i). Many of the Clif Bar products challenged contained 1.67 grams of saturated fat, which of course leaves plenty of "room" for an additional 18.33 grams to 23.33 grams of saturated per day for a recommended "healthy" diet, depending on the caloric intake of the person.  Even as to those products whose saturated fat is disclosed as 3 grams or higher, there is no allegation that any plaintiff failed to meet the recommended saturated fat intake guidelines for a single day.

Presumably, Plaintiffs did not restrict their diet to Clif Bar products on a daily basis, but, as apparent health-conscious consumers, sought to include in their diet vegetables, grains, proteins, and other sources of nutrients.  As explained in the 1994 advisory preamble, explained above, FDA was setting fat levels for "health" with reference to specific products as part of a larger set of dietary recommendations.  59 Fed. Reg. 24232-01, *supra*, at 24232 ("[t]he agency tentatively concluded that foods labeled with the term 'healthy' could be used with a variety of foods to . . . achieve a total diet that conforms to current dietary guidelines").  It did not set the levels with the idea that consuming the daily value of the products at issue with fat levels higher than permitted for "healthy" nutrient content claims by itself would result in a daily diet not in conformance with the dietary guidelines then in effect.

The completely deficient nature of Plaintiffs' tortured fraud pleading is also illustrated in FDA's 2014 comments to a Proposed Supplemental Final Rule to the familiar "Nutrition Facts" panel on the back of food labels. In this Proposed Supplemental Rule, FDA proposes among other things to eliminate the requirement of stating "Calories from Fat" in the Nutrition Facts panel. In proposing this change, FDA explained at length that current (as of 2014) dietary guidelines "no longer emphasize total fat . . . the 2010 DGA [Dietary Guidelines for Americans] concluded that the *type* of fat consumed was more relevant in reducing the risk of CHD [coronary heart disease] than overall total fat intake." 79 Fed. Red. 11880-01, at 11891 (Mar. 3, 2014). A copy of 79 Fed. Reg. 11880-01 is attached to the Van Gundy Declaration as **Exhibit 2**. This March 3, 2014 Federal Register notice by FDA goes into great length explaining why FDA was moving away from its 1993 rulemaking (final in 1994) on total fat because "current dietary recommendations no longer emphasize total fat." 79 Fed. Reg. at 11891.

The entirety of Plaintiffs' claims are built on being duped into *potentially* consuming more overall levels of total fat and saturated fat than what was recommended in 1994. Yet it is clear that twenty years later the health concern supposedly embraced by Plaintiffs as to overall levels of fat is not supported by "current science," the FDA, by the 2010 Dietary Guidelines for Americans, or any other reasonable source for a health-conscious consumer/plaintiff. Plaintiffs are not alleging that Clif Bar in any way caused them to consume *types* of fat in excess of *current* dietary guidelines. Therefore, a closer examination of the purpose of the FDA regulations relied upon by Plaintiffs does not support Plaintiffs' implied false representation theory, at least not for a purported class going back four years to 2012.

Moreover, if Plaintiffs' professed knowledge and desire to maintain "healthy" fat intake levels is really a concern, then they could have looked at the total levels of fat and saturated fat disclosed on the back of every label challenged. If Plaintiffs are sophisticated enough to care about use of the term health or healthy associated with nutrient content statements as reflected in FDA regulations and advisory statements going back to 1994, they are sophisticated enough to read the levels of fat disclosed on Clif Bar products on the back Nutrition facts panel and compare those with whatever set of dietary guidelines they care to use as a reference. *Daugherty v. American Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 839 (2006) (practice cannot be unfair under UCL Section 17200 where injury plaintiff easily could have avoided); *Guttmann v. Nissin Foods (U.S.A.) Company, Inc.*, No. C 15-00567-WHA, 2015 WL 4881073

(N.D. Cal. Aug. 14, 2015) (plaintiff could have avoided alleged injury from consuming partially-hydrogenated oils by reading nutrition facts panel disclosing same). Plaintiffs are not alleging that Clif Bar failed to disclose total fat levels on any product, or that Clif Bar's disclosures were in any way inaccurate.

Finally, all of the foregoing assumes that the challenged product contained the term "health" or "healthy" on the label. In fact, half of the products challenged by Plaintiffs contain no such term at all. Instead, these other label statements involve use of the terms "wholesome," "nutritious," or "good for you," which terms do not even appear in the actual regulations.

Instead, Plaintiffs rely on statements in the advisory preamble to the 1994 Final Rule that: "the agency advises that when these terms appear in association with an explicit or implicit nutrient content claim or statement about a nutrient, they will be implied nutrient content claims and subject to the provisions of section 403(r) of the act." In that same section of the preamble, however, FDA also noted that: "[w]hile the agency recognizes that terms such as "nutritious," "wholesome," and "good for you" can be implied nutrient content claims when they appear in a nutritional context on a label or in labeling, the agency does not believe that they are necessarily synonymous with 'healthy.'" However this contradiction is resolved, only "health" is defined in the regulations cited by Plaintiffs, and it is anyone's guess as to FDA's current position on levels of total fat and "health" and its supposed synonyms given the "current science" emphasizing the kind of fat over the amount of fat.

However, despite Plaintiffs' contentions in the Complaint, the FDA intentionally refrained from defining the use of such terms as "wholesome," "nutritious," or "good for our bodies." *See* 59 Fed. Reg. 24232-01, at 24236. For this reason alone, the Court at a minimum could dismiss Plaintiffs' claims not involving "health" or "healthy" because FDA has not defined terms such as "wholesome," "nutritious," or "good for you" in the context of nutrient content claims. Instead, FDA obliquely has mentioned in the preamble to the Final Rule that such "non-health" terms will be treated the same as "health" under the nutrient content regulations, but FDA in that very conclusion qualifies its statements that it only "advises" that this is the case and so does not have the force of law. *Id.*

### c. Plaintiffs fail to plead damages with the requisite specificity.

Plaintiffs also fail to plead damages with the requisite specificity. They provide boilerplate

allegations that maybe they would have bought fewer Clif Bar products, maybe they would not have bought them at all, or perhaps they would have bought supposedly less expensive competitive products. Failure to plead a definite amount of damages resulting from the fraud also renders Plaintiffs' claims for relief deficient as a matter of law. *Nagy v. Nagy*, 210 Cal. App. 3d 1262 (1989).

###### d.    Plaintiffs' have failed to plead with specificity the remaining elements of fraud.

Because Plaintiffs have failed to plead with specificity a false or misleading representation, or damages, they cannot and therefore have failed to plead justifiable reliance on any misrepresentation, and damages flowing therefrom.  Moreover, Plaintiffs have failed to plead at all that Clif Bar allegedly had knowledge of any falsity, or made the allegedly false statement with an intent to defraud.  Plaintiffs thus fail to state *any* element of fraud, and therefore the Court can dismiss the Complaint for failure to plead any one element.

###### e.    Plaintiffs' claim for quasi-contract similarly fails.

As previously explained, Plaintiffs' claim for quasi-contract is premised on the same alleged fraud as with the other claims for relief.  When a plaintiff fails "to sufficiently plead an actionable misrepresentation or omission, his [or her] restitution claim must be dismissed." *Rojas-Lozano v. Google, Inc.,* No. 15-cv-03751-JSC, 2016 WL 429794 (N.D. Cal. February 3, 2016) (*quoting Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913 (N.D. Cal. 2012).  Accordingly, Plaintiffs have not alleged a cognizable, plausible basis to state a claim for quasi-contract because the underlying misrepresentation is identical to, and fails for the same reason as, the alleged misrepresentation for the other claims for relief.

##### 2.    Plaintiffs' Claims Are Not Plausible

Even if Plaintiffs have pled the elements of fraud with the requisite specificity, their claims are not plausible and may be dismissed as a matter of law for this separate and independent reason.  The "plausibility" required for a claim to survive a motion to dismiss derives from the "reasonable consumer" standard for cases of alleged consumer deception: "claims under the California consumer protection statutes are governed by the 'reasonable consumer' test." *Ebner v. Fresh, Inc.*, No. 13–56644, 2016 WL 1056088 at *4-5 (9th Cir. Mar. 17, 2016) (claim that lipstick tube that accurately disclosed net weight of the lip product but only allowed 75% to advance to the top of the tube not plausible).  Plausibility requires more than a few consumers conceivably might be misled, but rather a probability "that a

significant portion of the general consumer public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496 (2003).

Here, Plaintiffs' claims are not remotely "plausible," and should be dismissed for that very reason alone with prejudice.  One would have to imagine that a significant portion of the public, or those consuming Clif Bars, understood that the term "healthy" when used in associated with nutrient content claims was regulated by the FDA in terms of levels of total fat and saturated fat, and that fat levels exceeding those limits meant that the challenged product was not "particularly useful" in meeting 1994 dietary guidelines (as opposed to the current science emphasizing types of fat over amounts of fat).  Of course this is absurd, because "healthy" can mean different things to different people.  Certainly, products such as those offered by Clif Bar are primarily made from organic ingredients that offer high levels of fiber and protein, and thus will be viewed by many consumers as "healthy" regardless of Plaintiffs' outdated 1994 version of permissible levels of fat.

Numerous cases, in addition to those cited above, have rejected similar "implausible" claims as a matter of law.  *McKinnis v. Sunny Delight Beverages Co.*, No. CV 07–02034–RGK (JCx), 2007 WL 4766525, at *4 (C.D. Cal. Sept. 4, 2007) ("[a] reasonable consumer who makes even a cursory review of the product labels at issue here would find not only the precise fruit content of Defendant's products, but also that Defendant's products are fruit 'flavored' and contain minimal quantities of concentrated fruit juice").  In *Gallagher v. Chipotle Mexican Grill, Inc.*, No. 15-cv-03952-HSG, 2016 WL 454083, at *3-4 (N.D. Cal. Feb. 5, 2016), for example, the Court rejected as a matter of law as implausible claims state consumer challenging "non-GMO" claims for meat and dairy products from animals that were not themselves "GMO," but rather, had consumed GMO feed.  *See also Carrea v. Dreyer's Grand Ice Cream*, 475 Fed. Appx. 113, 115 (9th Cir. 2012) (affirming dismissal because implausible that reasonable consumer would interpret "Original Sundae Cone" to mean a product more wholesome than competing products); *Pelayo v. Nestle USA, Inc.*, 989 F. Supp. 2d 973, 978 (C.D. Cal. 2013) (plaintiff's challenge to all natural claim as to pasta as false or misleading was implausible because "reasonable consumer is aware [the pasta products] are not springing fully formed from Ravioli trees and Tortellini bushes").  Undoubtedly, Plaintiffs here will try to explain how the decision in *Williams v. Gerber Prods. Co.*, 552 F.3d 934 (9th Cir. 2008) supports their position, but that case involved an obvious false

assertion where the product label showed vignettes of various fruits whose juice was not in the product. *See Arroyo v. Pfizer, Inc.*, Case No. C-12-4030, 2013 WL 415607 (N.D. Cal. Jan. 31, 2013) (distinguishing *Williams*).

### 3.    Plaintiffs' Have Not Pled Cognizable Injury Sufficient for Standing for the State-Law Consumer Protection Claims.

Plaintiffs' failure to plead reliance on an actual misrepresentation not only renders their fraud pleadings legally deficient, but also demonstrates their lack of standing under the UCL, FAL and CLRA.  All of the consumer protection statute claims for relief require Plaintiffs to plead and prove a pecuniary injury, reliance, and "immediate" causation.  *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 825 n.1 (9th Cir. 2011).  Because Plaintiffs' claims sound in fraud, Plaintiffs must establish "actual reliance on the allegedly deceptive or misleading statements," *Kwikset*, 51 Cal.4th at 310, 320 (and explaining new "statutory standing" requirements of Proposition 64 for UCL, FAL and CLRA claims).

Here, both Plaintiffs bought between them no less than 38 Clif Bar products, challenged here, over a two year period.  They both claim that the allegedly deceptive "healthy" (or supposed equivalents "nutritious," "wholesome," or "good for you") were uniformly deceptive across these different products for the same reasons in the same two-year period.  They both complain that the levels of total fat and saturated fat exceed those deemed by FDA as permissible to make "healthy" nutrient content claims, and yet they never allege when they bothered to look at the "healthy" claims and the levels of fat disclosed on the Nutrition Facts panel and discovered after two years that they have suffered injury.

Plaintiffs' claim of reliance on the allegedly deceptive "healthy nutrient content" labels therefore is legally defective and demonstrates additional grounds for lack of reliance and therefore lack of standing.  *See e.g. Hawkins v. The Kroger Company*, No. 15cv2320 JM(BLM) (S.D. Cal. Mar. 17, 2016) (court dismissed plaintiff's claim for lack of reliance and "immediate cause" standing under the UCL, FAL and CLRA because plaintiff claims she relied on "0g Trans Fat," but for years but never bothered to investigate the allegedly deceptive "0g Trans Fat" statement).  Similarly here, Plaintiffs' supposed reliance on "healthy" to mean "help with maintaining healthy dietary practices"

could not have been an "immediate" cause of injury after so many products over two years or more were bought by the plaintiffs with the same message and with the same disclosure of fat levels.

The decision in *Hawkins* also highlights another defect in Plaintiffs' standing here, namely a lack of "cognizable injury" necessary for standing under the state-law consumer protection statutes. In *Hawkins*, the court rejected plaintiff's claim of "cognizable injury" based on heart disease, diabetes, etc. that consuming trans fat allegedly caused her, plus monies lost because "similar products without the misleading labeling would have cost less" as "generalized and hypothetical risks of harm," and that the allegations were "too speculative" to support a claim of "economic injury." *Hawkins*, *supra*, at 7, citing *Simpson v. Cal Pizza Kitchen, Inc.*, 989 F. Supp. 2d 1015 (S.D. Cal. 2013). Similarly here, Plaintiffs's alleged "cognizable injury" in purchasing a product "less" "particularly useful" for achieving dietary guidelines is the epitome of "generalized harm" insufficient for "cognizable injury," and their equally unspecified claims of how they suffered economic injury should fare no better here than in *Hawkins*.

### 4. Plaintiffs Do Not have Article III Standing to Seek Injunctive Relief

In order to achieve standing to seek prospective injunctive relief under Article III of the U.S. Constitution, Plaintiffs need to affirmatively "demonstrate a real and immediate threat of repeated injury in the future." *Chapman v. Pier I Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (internal quotation marks omitted). In UCL cases, "where a plaintiff has no intention of purchasing the product in the future, a majority of district courts have held that the plaintiff has no standing to seek prospective injunctive relief, and some have also held that a plaintiff who is aware of allegedly misleading advertising has no standing to seek prospective injunctive relief." *Davidson v. Kimberly-Clark Corporation*, 76 F. Supp. 3d 964, 969 (N.D. Cal. 2014).

Here, Plaintiffs do not allege that they are going to purchase Clif or Luna Bars in the future. To the contrary, they allege that if they had knowledge that the products at issue did not conform to FDA requirements, they would not have purchased them in the first place. See Compl., ¶¶ 8-9; *see also Gallagher v. Chipotle Mexican Grill, Inc.*, *supra*, 2016 WL 454083 at *3 (N.D. Cal. February 5, 2016) ("Plaintiff has not alleged 'a real and immediate threat' of future injury and does not have standing to

seek injunctive relief.").  If anything, Plaintiffs have alleged that they will not purchase any more products from Clif Bar because they filed their Complaint on March 4, 2016, but both have alleged that the last Clif Bar product they purchased was back in 2015 (Perieff - September 15, 2015; Cheslow – December 2015).  See Compl., ¶¶ 8-9.

> **B.    Alternatively, the Court Should Stay this Action on the Grounds of Primary Jurisdiction Pending FDA Determination of the Citizens Petition to Amend the Regulations at Issue**

Not only did the FDA in its supplemental rulemaking noted above call into question dietary guidelines as to total fat, but there is currently pending a "Citizen Petition" by another bar manufacturer to revise the "health nutrient content" regulations at issue in this case.  In other words, FDA has under review the basic premise of Plaintiffs' claims – that the fat levels in its products are too high for use of the term "healthy."  In the event the Court is not inclined to dismiss the Complaint for the foregoing reasons, respectfully the Court should stay this case on primary jurisdiction grounds while FDA completes its rulemaking and considers the petition.

The facts of this case certainly fit the bill for a primary jurisdiction stay: "[t]he primary jurisdiction doctrine allows courts to stay proceedings or to dismiss a complaint without prejudice pending the resolution of an issue within the special competence of an administrative agency . . . and is to be used only if an issue of first impression or a particularly complicated issue Congress has committed to a regulatory agency."  *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008).  Four factors are weighed when a court determines whether to apply the primary jurisdiction doctrine: "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration."  *Syntek Semiconductor Co. v. Microchip Tech., Inc.*, 307 F.3d 775, 781 (9th Cir. 2002).  All of these factors are easily met here.

Kind, LLC, a bar manufacturer with nationwide distribution, has filed a Citizen Petition with the FDA, seeking revisions to 21 C.F.R. Section 101.65(d)(2) to conform with current scientific understanding of food and nutrition.  As is clear from this petition, Kind, LLC is asking FDA to revise upward total levels of fat permitted in order to make "healthy" claims on its bars.  Should this occur, then

DEFENDANT CLIF BAR & COMPANY'S NOTICE OF MOTION, MOTION TO DISMISS COMPLAINT
AND MEMORANDUM OF POINTS AND AUTHORITIES

all of Plaintiffs' claims for relief conceivably would be mooted. See **Exhibit 3** to Van Gundy Declaration.

Application of primary jurisdiction is particularly cogent here where FDA has indicated that the total amount of fat emphasized in the healthy nutrient content regulations [21 C.F.R. §101.65(d)(2)] is not supported by "current science." FDA's comments arose, as previously explained, in a March 3, 2014 preamble to the Proposed Supplemental Rule on the Nutrition Facts Panel, wherein FDA proposed removing "Calories from fat" from the label: "[a]mong other amendments related to declaration of nutrients, we [the FDA] are proposing to remove the declaration of "Calories from fat" because current science supports a view that the type of fat is more relevant than overall total fat intake in increased risk of chronic diseases." 79 Fed. Reg. 11880-01, at 11881, 2014 WL 794562.

Under these circumstances, where Congress has squarely placed the regulatory authority of food labeling laws such as 21 C.F.R. §§ 101.65(d)(2) within FDA purview, where there is indication the FDA revising its labeling requirements for fat, and where another bar manufacturer has already requested FDA examination and action on the regulations at issue in this case, deference to the FDA's regulatory authority is only prudent. *Barnes v. Campbell Soup Company*, No. C-12-05185-JSW, 2013 WL 5530017 at *8-9 (N.D. Cal. July 25, 2013); *Pom Wonderful, LLC v. Coca-Cola Co.*, 679 F.3d 1170, 1176 (9th Cir. 2002).

## V.    CONCLUSION

For all of the foregoing reasons, the Court respectfully should grant Defendant Clif Bar & Company's motion to dismiss the Complaint with prejudice, or alternatively, stay or dismiss the action without prejudice on the grounds of primary jurisdiction pending FDA's determination on the Kind, LLC Citizen Petition.

Dated:  April 13, 2016                                    KELLER AND HECKMAN, LLP

                                                          By: _____
                                                              Christopher Van Gundy
                                                              Attorneys for Defendant Clif Bar & Company

4815-9472-2864, v. 1

DEFENDANT CLIF BAR & COMPANY'S NOTICE OF MOTION, MOTION TO DISMISS COMPLAINT
AND MEMORANDUM OF POINTS AND AUTHORITIES